# In re LUBONOVIC.

## (Admissions Docket No. 21)

Per curiam.

Applicant asserts that the Board to Determine Fitness of Bar Applicants erred in denying him a certificate of fitness to practice law. We affirm.

Applicant was president of Heritage National Mortgage Company, a "loan originating" enterprise.[1] In March of 1977, he became sole owner of the company. Approximately one year later, Heritage filed a voluntary petition for bankruptcy.

Shortly after the company's demise, applicant applied for a certificate of fitness to practice law. His application was tentatively denied on the ground that he had engaged in certain questionable practices while operating Heritage. Applicant denied any wrongful conduct and requested a hearing.

Both applicant and the board presented evidence at the hearing. The hearing officer made findings of fact and conclusions of law, which include the following:

"Applicant's company did commingle escrow funds rightfully due to real estate sellers or mortgage holders with funds of his company, and applicant's company did not maintain or ascertain that there were sufficient funds available to cover its obligations, drafts, and checks, thereby causing financial loss to sellers and mortgage holders.

"Applicant did withdraw or allow to be withdrawn large sums of money from such commingled funds without regard to the potential loss to mortgage holders and/or sellers of property; such practice did, in fact, result in substantial loss to persons for whom the funds were being held in escrow.

"Applicant, by his own statement and that of his controller, never had a financial statement of the condition of his own company and never knew how his company stood, yet he continued to open new branch offices, solicit loans, close real estate transactions and issue drafts and checks without regard to the consequences. During this period, applicant's company bought an airplane, a yacht or cabin cruiser, and threw a party in December, 1977, at a local hotel which cost his company $9,000.00.

---

[1] Heritage did not provide permanent mortgage financing. In addition to loan origination services, it offered temporary financing based upon a line of credit from permanent financers as well as its own capital reserves. Packages of loans were ultimately sold to permanent financers.

"Applicant disclaims any knowledge of the affairs that ultimately led to the filing of the Bankruptcy Petition, except the action of Kislack Mortgage Company's cutting off the funds, and he disclaims any knowledge of the financial condition of the company, as well as the closing attorney's failure to pay off outstanding mortgages which he learned about only after the fact.

"Applicant did allow his company to operate and to commit itself by explosive growth and expansion without sufficient corporate funds and, in fact, by the use of money belonging to others which had been improperly and unduly held in escrow by applicant's company, all of which was known or should have been known to applicant.

"Applicant's conduct, in the operation of Heritage, discloses, if not total disregard, a callous disregard of consequences to persons whom the corporation sought to represent."

Based upon these findings and conclusions, the hearing officer recommended that applicant's request for certification of fitness be denied. The full board met on March 26, 1981, and adopted the hearing officer's recommendation. Applicant raises four enumerations of error in this appeal.

1. In his first two enumerations, applicant contends that the board "has failed to meet its burden of proof as to specific acts of misconduct" and that the Board's decision "is against the weight of the evidence."

"In proceedings of this nature, the burden clearly rests upon the applicant to prove that he possesses the requisite character and moral fitness. [Cits.]" *In re Beasley,* 243 Ga. 134, 136 (252 SE2d 138) (1979). "If there are material factual disputes, the Board must resolve them by making findings of fact" (In re Rogers, 297 NC 48, 59 (253 SE2d 912) (1979)), and these findings, though not binding, are entitled to great weight. See Bernstein v. Committee of Bar Examiners, 69 Cal. 2d 90 (70 Cal. Rptr. 106, 443 P2d 570) (1968). "If at the conclusion of the proceedings the evidence of good character and that of bad character are found in even balance, the [Board] may refuse admission to the applicant . . ." Konigsberg v. State Bar of California, 366 U. S. 36, 42 (81 SC 997, 6 LE2d 105) (1961). "[T]his court's primary responsibility is to the public to see that those who are admitted to practice are ethically cognizant and mature individuals who have the character to withstand the temptations which are placed before them as they handle other people's money and affairs . . . If we are not reasonably convinced that the applicant can withstand such temptations we should not admit him. Doubt of consequence, of necessity, must be decided in favor of the public's protection. There lie our first duty and concern . . . " In re Alpert, 269 Or. 508, 518 (525 P2d 1042, 1046) (1974).

The evidence in the instant case establishes that applicant engaged in a highly irresponsible course of conduct as president of Heritage. At a time when applicant admittedly had no idea of the financial status of his company, he pressed for expansion. As a result, innocent people were victimized. In our view, it was not incumbent upon the Board to establish that applicant knew his actions would lead to harm. Given the nature of the applicant's business, it is enough that he sought to expand Heritage as he did without regard to the company's financial capabilities. "[I]rresponsible conduct and unethical or questionable business practices have been held to constitute a proper basis for denial of admission to the bar. [Cits.]" Application of Appel, 116 N. H. 400, 401 (359 A 2d 634) (1976). Under the evidence presented, the decision of the Board must be affirmed.

2. Applicant contends that the Board abused its discretion in failing to prescribe a period of rehabilitation because "it is highly unlikely that he would ever be in such a questionable position again." We cannot accept this position. "In lieu of expressly rejecting an applicant for admission, a decision that a period of rehabilitation is necessary *may* be rendered by the board." (Emphasis supplied.) Rules for Admission to the Bar, Board to Determine Fitness of Bar Applicants, § 6 (Appendix to Code Ann. Ch. 9-1). The Board was not required to prescribe a period of rehabilitation, and under the evidence there was no abuse of discretion. See *In re Beasley,* supra at 138; see also *Gardner v. Gwinnett Circuit Bar Assn.,* 241 Ga. 614 (247 SE2d 64) (1978).

3. In his final enumeration, applicant asserts that he was denied due process because "the Board [is not] bound to strictly observe the rules of evidence but [must] consider all evidence deemed creditable in an effort to discover the truth without undue embarrassment to the applicant." Rules for Admission to Bar, Board to Determine Fitness of Bar Applicants, § 6. We cannot agree. Bar admissions hearings are not criminal proceedings. *In re Beasley,* supra at 136; *Gardner v. Gwinnett Circuit Bar Assn.,* supra at 615. "A hearing to determine character and fitness should be more of a mutual inquiry for the purpose of acquainting this court with the applicant's innermost feelings and personal views on those aspects of morality, attention to duty, forthrightness and self-restraint which are usually associated with the accepted definition of 'good moral character.' Such a view commands the utmost in cooperation between the applicant and the board, and leaves little room for the employment of doctrines which work to keep relevant information from the board. Although those devices are valid and proper in many instances, they should not be invoked before a body whose sole function is to fully determine all the facts which can logically reflect upon the wisdom of

admitting an applicant with a questionable background to the practice of law." In re Application of Davis, 38 Ohio St. 2d 273, 274-275 (313 NE2d 363) (1974).

*The decision of the board is affirmed. Jordan, C. J., Hill, P. J., Marshall, Clark, Smith and Gregory, JJ., concur.*

DECIDED SEPTEMBER 29, 1981.

*Michael J. Bowers, Attorney General, Kathryn L. Allen, Assistant Attorney General,* for Board to Determine Fitness of Bar Applicants.

*James F. Stovall III,* for applicant.