### S08Z1544. IN RE MARILYN RINGSTAFF.
(706 SE2d 394)

PER CURIAM.

Marilyn Ringstaff appeals the final decision of the Board to Determine Fitness of Bar Applicants ("the Board") denying her certification of fitness to practice law. After reviewing the record, we conclude the Board erred; accordingly, we reverse the Board's decision and order that a certificate of fitness to practice law be granted Ms. Ringstaff.

After conducting an informal meeting with Ms. Ringstaff, the Board tentatively denied a certificate of moral fitness and issued specifications when Ringstaff requested a formal hearing. Part A, §§ 7 and 8, Rules Governing Admission to the Practice of Law. In its specifications, the Board recounted Ringstaff's conduct with regard to a minor traffic accident in which she was charged with following too closely and with regard to her self-representation as a first-year law student in the prosecution of the traffic charge at trial and on appeal;[1] the contents of a note Ringstaff sent to the trial court's clerk when she remitted payment of the $250 fine[2] after being found guilty;[3] and remarks Ringstaff made to the Board during the informal hearing.[4]

---

[1] The Board stated in its specifications that Ringstaff had been involved in a minor traffic accident in which her vehicle suffered no damage and that, despite the responding officer permitting her to leave, applicant insisted that a police report be written, even after she was told that issuance of a report was dependent upon her being charged with following too closely. During the jury trial that applicant demanded and at which she represented herself, applicant acted in a way the Board described as evidencing "a total lack of understanding and mistrust of the court and the law." The Board also noted that applicant's appeal to the Court of Appeals of Georgia included ineffective assistance of counsel as an enumerated error.

[2] The Board included in its specifications the contents of a letter applicant sent to the clerk of the trial court along with payment of her fine. The note read as follows:

April: Thanks for taking care of this -- keep the change [smiley face] put it into a police/judicial education fund. I can certainly say this has been an educational experience. I'm now a second-year law student and can honestly relate to what a crooked and inequitable system of "justice" we have. The money was well-spent, I'm sure it will make me a better attorney [smiley face]. Marilyn Ringstaff.

The Board did not include a quotation that follows Ms. Ringstaff's name on the note and which states: "All that is necessary for the triumph of evil is that good men do nothing."

[3] Applicant was found guilty in a jury trial and that judgment was affirmed on appeal in an unreported decision. *Ringstaff v. State*, 265 Ga. App. XXVII (2004).

[4] The Board stated applicant had made remarks during her informal interview with the Board that the Board described as indicating applicant was "sure" she had been right in her belief that the ticket should have been dismissed; that "every police officer lies"; that the police officer who issued the citation had committed perjury when the officer testified about the

Ringstaff filed an answer in which she denied the specifications, and a hearing was held before a hearing officer appointed by this Court. Part A, § 8, Rules Governing Admission to the Practice of Law. The hearing officer found by clear and convincing evidence that Ringstaff possessed the integrity and good character to be certified fit to practice law, concluded that the evidence presented against Ringstaff bore upon her competence rather than her character and fitness, and recommended that Ringstaff be permitted to sit for the Georgia bar exam. After reviewing the hearing officer's recommendation, the Board informed Ringstaff of its final decision that she was not certified as fit to practice law and of its rejection of the hearing officer's recommendation.[5] The Board advised Ringstaff that it disagreed with the hearing officer's conclusion that the evidence presented at the hearing bore upon Ringstaff's competence to practice law rather than her character and her fitness to practice and, citing *In re Cason*, 249 Ga. 806 (294 SE2d 520) (1982), informed Ringstaff that she had failed to prove "full and complete rehabilitation by clear and convincing evidence" as was required "[i]n cases such as this involving questions about prior conduct showing a disrespect for the law and lack of professionalism. . . ." Ringstaff timely initiated an appeal in this Court from the Board's denial of her application for certification of fitness to practice law. See Part F, § 8, Rules Governing Admission to the Practice of Law (2007).

1. The Board erred as a matter of law when it imposed upon Ringstaff the burden of proving full and complete rehabilitation by clear and convincing evidence. An applicant must shoulder the additional burden of proving rehabilitation to establish good moral character "[w]here an applicant for admission to the bar has a criminal record" (*In re Cason*, supra, 249 Ga. at 808), where an applicant has engaged in criminal conduct that was not prosecuted (*In re K. S. L.*, 269 Ga. 51 (495 SE2d 276) (1998)), or where an applicant seeks reinstatement to the bar. *In the Matter of Spence*, 271 Ga. 630 (523 SE2d 323) (1999) (applicant seeking reinstatement following disbarment); *In the Matter of Oliver*, 268 Ga. 882 (494 SE2d 333) (1998) (applicant seeking reinstatement following voluntary surrender of license). Inasmuch as this case presents none of these circumstances, the rehabilitation standard was not applicable and the Board erred in applying it.

2. This Court has a responsibility to the public "to see that those

citation because the officer had issued the ticket based on the word of two "unreliable" witnesses; and that the trial judge knew the officer had committed perjury.

[5] The hearing officer's findings of fact and recommendations are not binding on the Board. Part A, § 8, Rules Governing Admission to the Practice of Law.

who are admitted to practice are ethically cognizant and mature individuals who have the character to withstand the temptations which are placed before them as they handle other people's money and affairs." (Punctuation omitted.) *In re Cason*, supra, 249 Ga. at 809. The Board has the duty to "inquire into the character and fitness of applicants for admission to the practice of law and . . . [to] certify as fit to practice law those applicants who have established to the Board's satisfaction that they possess the integrity and character requisite to be members of the Bar of Georgia." Part A, § 2, Rules Governing Admission to the Practice of Law. See also *In re Cason*, supra, 249 Ga. at 809 ("The function of the Fitness Board is to prevent those not demonstrating the requisite moral character and fitness from being allowed to become lawyers."). The purpose of a hearing to determine character and fitness is to "acquaint[ ] this court with the applicant's innermost feelings and personal views on those aspects of morality, attention to duty, forthrightness and self-restraint which are usually associated with the accepted definition of 'good moral character.' " *In re Lubonovic*, 248 Ga. 243 (3) (282 SE2d 298) (1981). It is the applicant's burden to prove she possesses the requisite character and moral fitness to practice law, and this Court will uphold the Board's decision if there is any evidence to support it. *In re R. M. C.*, 272 Ga. 99 (1) (525 SE2d 100) (2000). Ultimately, the decision whether an applicant is fit to practice law in Georgia rests with this Court. *In re Spence*, 275 Ga. 202, 204 (563 SE2d 129) (2002). After reviewing the specifications cited by the Board in its tentative decision and reiterated in its final decision[6] and examining the transcript of the informal hearing cited by the Board as the basis for its decision, we conclude that there is no evidence to support the Board's decision.

Twelve of the seventeen pages of the transcript of the Board's informal interview with applicant are devoted to discussions of the applicant's pro se representation in the trial of the traffic violation, the appeal, and the content of the note she sent to the clerk of the trial court. When asked to tell the Board about the trial, Ms. Ringstaff stated:

> Well, it was a disaster from the start, I wasn't expecting a trial to begin with. I thought it would be dismissed because there was no basis in Georgia law for them to give me a ticket to begin with. I wrote a brief, — researched it very carefully and asked the judge to dismiss it. I was at the beginning — first year of law school at the time. I had no legal background

---

[6] See footnotes 1, 2, and 4, supra.

and, but I still researched it very thoroughly and I was sure that I was right on it and I asked the judge to dismiss the case, and he would not. I, I don't remember his reason since it has been five years but he said this is going to trial so — and it went to trial and everything that I asked the judge, he refused — like I asked the police officer that had written the ticket — I asked the judge to remove him from the room because he was a prime witness. The judge would not agree to have him removed and I asked the officer about the problems in their own police force and he refused to let me ask those questions and the same officer that wrote me a ticket had been recently involved in an incident that had been publicized in the Rome papers and his partner had actually raped a sixteen year old girl and the [judge] refused to let me question him about that incident. . . . He did not allow that, and he would not allow me to talk about the numbers of the traffic tickets that were issued in Floyd County . . . this happened the month that there was a lot of publication about the individual's right to a jury trial with traffic tickets and the right to indigent representation and, I think, that's why they pushed the trial on at least one or two.

When asked whether she had felt she was treated unfairly by the judge, Ms. Ringstaff stated:

Yes, it should have been dismissed in the first place, I think, on the basis of my brief and it was wrong to go to trial in the first place. I think it was wrong to have the police officer stay in the room when he was a prime witness in the case and, but there were several major errors and he never — once he saw that I was unable to represent myself he never asked me to — if I needed to take a break or if I wanted to obtain representation at that time. He never asked me any of those things when it became evident that I was not able to represent myself.

With regard to whether the prosecutor had treated her unfairly, Ms. Ringstaff stated: "I thought he brought a case that should never have been brought and — I haven't reviewed the case recently, but there are several things I thought of in response to the prosecutor that I was unhappy with." When asked about her appellate contention that she received ineffective assistance of counsel at trial, applicant stated:

I did not know the law at the time and I should have — the judge should, I believe, have asked me if I wanted to take a

break and get counsel. There were many legal tactics I wasn't aware of that I should have perfected a record. There were several instances that — I'm saying under the strictest standard an attorney would not have done.

When asked what she had meant when she wrote to the trial court clerk that the system of justice was crooked and inequitable, Ms. Ringstaff stated:

Well, maybe I can explain. When I started in criminal law, I remember studying some of the writings of Alan Dershowitz and one of the articles that we read was his article that said, "every police officer lies — every district attorney knows that every police officer lies — every superior court judge knows that every district attorney knows that every police officer lies and every appeals court judge knows that a superior court judge knows that every district attorney knows that every police officer lies" and I would never have believed that had I not experienced that myself because those officers lied on the stand and the district attorney knew that they were doing it and, I believe, the Superior Court Judge knew it. It was just a great miscarriage of justice and I still stand by those words.

She told the Board "I would not write those words now and the only reason I did at that time was because I knew April [the clerk to whom the note was addressed]. I had talked to her several times on the phone and I thought it was more of an off-the-record note to her." When asked whether she believed the system of justice is crooked and inequitable, Ms. Ringstaff responded: "No, overall I believe it's the best we've got, but there are problems in the system. . . ." While applicant continued to stand by her assertion that the police officer who issued her the ticket committed perjury, she acknowledged that she did not know whether the district attorney or the trial judge knew that. When asked whether she believed the appellate court "knew the superior court judge knew it," she replied:

I don't know how he could not by reading that record because it's, it's very plain that the police gave me a ticket for an event they did not witness — they knew nothing about it and it was — they were not present at the scene. They based their entire information on an unreliable witness that was — that had called 911 and gave them a false 911 report and that's what the police had based this ticket on.

Applicant was asked whether it was her position the trial court erred when in permitted the prosecuting witness to sit at counsel table during the criminal trial, to which she responded that it had been her belief at the time.[7] She was asked whether she should have been permitted to question the police officer about the criminal charges the officer's former partner faced,[8] and she stated her belief that the testimony would have shown "problems with police officers in general" and that "the tendency of the officers to do un-policeman-like activity" would have been relevant. When asked how she felt about police officers, Ms. Ringstaff stated: "In general . . . , I think they have a tough job to do and, I think, overall do an excellent job, but I think the ones that were on the forces that we have problems with, they should be called on the problems, but overall I think they're excellent." She acknowledged that, as a result of her law school education and courses on Professionalism, it would be inappropriate for a lawyer to write the note she wrote, and that she had learned the distinction between what acts a lawyer, as compared to a lay person, should do. Upon further questioning regarding several rules contained in the Rules of Professional Conduct, Ms. Ringstaff affirmed the propriety of the principles that a lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and witnesses and that a lawyer commits professional misconduct when the lawyer engages in conduct prejudicial to the administration of justice. When asked, she stated her belief that her pro se representation in the traffic case was not prejudicial to the administration of justice.

The transcript of the informal hearing reflects that there is no evidence supporting the specifications listed by the Board and the conclusion drawn by the Board.

3. In her application, Ms. Ringstaff listed no criminal convictions or criminal conduct. In a separate category, she listed traffic citations for speeding (issued in 1983, 1990, and 2000), failure to come to a complete stop (2000), and the 2002 citation for following too closely. She listed her 1984 discharge in bankruptcy of several debts. The Director of the Office of Bar Admissions testified before the hearing officer that the Board had received no complaints about the applicant's personal moral characteristics or her integrity, other than the trial of the traffic citation and its aftermath and the informal hearing

---

[7] This line of questioning goes more to applicant's competence to try a case rather than her moral character and fitness to practice law. The Director of the Office of Bar Admissions testified before the hearing officer that competence is determined by the Board of Bar Examiners and demonstrated by the bar examination.

[8] This question goes more to applicant's competence to try a case rather than her moral character and fitness to practice law.

held by the Board. The record contains the testimony before the hearing officer of an attorney who had supervised Ms. Ringstaff's work in the healthcare unit of the Atlanta Legal Aid Society for two years. He described her as quiet, studious, resourceful, conscientious, and very deferential to authority, and stated she had not made any statements to him that were critical of the judicial system, judges, or lawyers. A law-school professor described applicant as completely respectful of all her classmates and testified she never heard applicant say anything negative about law enforcement or display contempt or a lack of respect for any category of persons. The professor stated she had no reservations about Ms. Ringstaff's character or fitness. Another law-school professor testified he had never seen applicant display contempt for the legal system and found her always to have conducted herself with great candor and truthfulness.

We conclude from our review of the record that Ms. Ringstaff established that she possesses the integrity and character required to be a member of the State Bar of Georgia. Inasmuch as the Board's grounds for finding otherwise are not supported by the record, we reverse the decision of the Board and direct that it issue a certificate of fitness to practice law to Ms. Ringstaff.

4. In light of the above, we need not address applicant's remaining enumerations of error.

*Certificate of fitness to practice law granted. All the Justices concur.*

DECIDED FEBRUARY 28, 2011.

*Jo Carol Nesset-Sale*, for appellant.

*Thurbert E. Baker, Attorney General, Rebecca S. Mick, Senior Assistant Attorney General, Ann S. Brumbaugh, Assistant Attorney General, Sarah E. Lockwood, Office of Bar Admissions*, for appellee.