295 Ga. 64
FINAL COPY

S12Z0998.  IN RE WILLIAM NORMAN ROBBINS.

PER CURIAM.

This is a petition for readmission as a member of the bar of this state. William Norman Robbins was admitted to the Bar in 1978.  He was disbarred by this Court in 2003 for admittedly paying a "runner" to refer clients to his office, in violation of Standard 13 of Bar Rule 4-102 (d). *In re Robbins*, 276 Ga. 124 (575 SE2d 501) (2003).  As aggravating circumstances, this Court took into account prior disciplinary offenses resulting in four previous reprimands.[1]  Id. at 125.  We also noted that Robbins made false statements during the disciplinary process and refused to acknowledge his conduct was wrongful.  Id.

---

[1] In a 1988 public reprimand, Robbins was disciplined for placing a misleading ad that listed his firm's telephone number as an attorney referral service, in violation of Standard 5, Rule 4-102; in a 1996 public reprimand, Robbins was disciplined for publishing a newsletter referring to the firm and an attorney practicing with the firm as specializing in certain areas of the law when no one at his firm had completed the necessary training or obtained certification as a legal specialist, in violation of Standard 18; in a 1997 Investigative Panel reprimand, Robbins was disciplined for publishing a firm brochure stating that the firm's fee was contingent upon the outcome of the case without language regarding the expense of the action, in violation of Standard 5 (b), Rule 4-102; in a 1998 Review Panel reprimand, Robbins was disciplined for failing to deliver file materials to a former client's new lawyer when, during the pendency of the grievance, the missing materials were located after a more thorough search of the firm's files.   In addition, in 1985 the State Bar issued Robbins two informal letters of admonition for allowing his investigators to present themselves as attorneys to his clients.

More than five years after the date of disbarment, Robbins filed his application for certification of fitness for readmission. On December 10, 2009, the Board to Determine Fitness of Bar Applicants conducted an informal conference for the purpose of considering Robbins's application. At that conference, with respect to recognition of wrongdoing, Robbins was equivocal as to whether he knew, at the time he paid the runner a fee, that such payment was improper. He did, however, acknowledge that this conduct was the result of bad judgment for which he took responsibility and was sorry for it. With respect to rehabilitation, Robbins presented evidence that since his disbarment he had become more active in his temple, he had become involved in community service by joining the Kiwanis Club, and had become a patient volunteer with the Guillain-Barre Foundation after contracting the disease himself. He declared he was now a different person, and if readmitted he planned to become involved with volunteer lawyering and in community activities with other lawyers. He also testified that he had offered to assist the State Bar in educating the public and the bar about illegal lawyer fee-splitting.

After he was notified that his petition had been tentatively denied, Robbins requested a formal hearing. The Board provided Robbins with a list of

specifications setting forth the grounds on which the Board had tentatively denied his application and notifying him that unless he satisfactorily refuted these specifications at the hearing, the Board would deny his application. The list of specific allegations of misconduct concluded with the statement that the enumerated actions "constitute a pattern of conduct that demonstrates a lack of judgment, candor, integrity, character, professionalism, rehabilitation from prior unethical acts and the requisite moral fitness required of a prospective member of the State Bar of Georgia." The case was heard by hearing officer Hezekiah Sistrunk, Jr., on November 17, 2010. After more than a year had passed without a recommendation from the hearing officer, Robbins filed a motion to appoint a replacement officer, and this Court denied the motion but entered an order requiring the officer to enter his report within ten days or suffer sanctions to be entered by the Court. Three days later, on December 15, 2011, the hearing officer filed a 14-page report recommending against certification of fitness. By letter dated January 26, 2012, Robbins was notified that the Board had entered a final order denying the application, after consideration of the hearing officer's findings of fact, conclusions of law, and recommendations. Robbins filed this appeal.

1. In his first enumeration of error, Robbins asserts the deference normally accorded to the Board's decision is not required in this case for three reasons. First, Robbins asserts that the hearing officer's delay in issuing recommendations and the fact they were issued only after this Court's order directing him to do so creates the appearance of personal motive on the part of the hearing officer to recommend against certification, for to have reached any other recommendation after the delay would have been personally embarrassing to the officer. Robbins presents no evidence of bias or even argument to support such a conclusion other than speculation about human nature. The recommendation submitted by the hearing officer contained comprehensive findings of fact and conclusions of law supported by references to the hearing transcript and other evidence. It was well-reasoned and the recommendation was supported by the evidence.

Second, Robbins asserts that as a result of the delay, the record is no longer reflective of his current moral and ethical fitness for admission, which is what the Board to Determine Fitness of Bar Applicants is charged with determining. Robbins has failed to demonstrate any prejudice as a result of the

delay.[2]

Finally, we reject Robbins's assertion that the Board's decision did not comply with Part A, Section 8 (d), of the above-noted Rules, stating that the applicant must be notified of the Board's determination not to certify in writing, "giving its reasons for its decision." This requirement was fulfilled by the notification letter sent to Robbins which expressly referenced the Findings of Fact, Conclusions of Law, and Recommendation of the hearing officer and stated that the decision was made after reviewing the record and transcript of the hearing. Contrary to Robbins's argument, the form of the Board's written decision does not leave this Court without a record to review in making its decision to accept or reject the Board's decision. In arriving at its decision, this Court has reviewed the transcript of the informal conference, the transcript of the formal hearing, the Findings of Fact, Conclusions of Law, and Recommendation of the hearing officer, the Board's notification of decision letter, the Board's sealed investigative file, and all other records relating to the application for character and fitness certification that Robbins filed to support

---

[2] In any event, pursuant to the Rules of the Office of Bar Admissions Part A, Section 9, an applicant who has been denied certification of fitness to practice law may reapply after three years from the date a final decision is affirmed by this Court.

his appeal. The form of the decision letter in this case has not prejudiced Robbins's right to appellate review.

2. In cases in which past conduct requires a showing of rehabilitation in order to prove character and fitness for admission to the Bar, the applicant is required by the Board to produce evidence of, among other things, the taking of responsibility for past conduct, insight and appreciation for why the conduct raises fitness concerns, candor with the Board, good reputation and assurances of a desire and intention to conduct one's self in an exemplary fashion in the future, and positive action demonstrating rehabilitation by things such as occupation, religion, or community or civic service.[3] In such cases, the applicant's burden is to prove rehabilitation and fitness to be readmitted to the practice of law by clear and convincing evidence. See *In re Spence*, 275 Ga. 202 (563 SE2d 129) (2002). Robbins's remaining enumerations of error challenge the substance of the hearing officer's findings and conclusions and the Board's decision regarding Robbins's failure to meet the burden of clear and convincing evidence of his rehabilitation.

---

[3] See Policy Statement of the Board to Determine Fitness of Bar Applicants Regarding Character and Fitness Reviews at p. 6.

6

At the formal hearing, with respect to recognition of wrongdoing, Robbins gave evasive responses to questions about his conduct that had resulted in the disciplinary actions filed against him prior to the disbarment proceedings, which are set forth in footnote 1, supra. At first, he indicated he did not remember receiving the 1985 letters of admonition and that he did not review them prior to the hearing, even though they were cited in the specifications he received prior to the hearing. When pressed, he dismissed the letters by stating they did not constitute disciplinary actions against him but also stated he would have taken the letters very seriously and would have corrected the behavior noted in them. Regarding the 1998 Review Panel reprimand for a misleading ad, he refused to admit it was misleading and stated he did not think any potential client actually called the number advertised but he surmised the Bar must have called the number. Robbins attributed the newsletter that formed the basis for the 1996 public reprimand to an error by his office manager who published the newsletter before he reviewed it. He gave the same explanation for the firm brochure that formed the basis for the 1997 Investigative Panel reprimand. Robbins did, however, later testify that he took responsibility for these office mistakes. With respect to the 1998 Review Panel reprimand, Robbins admitted

7

he ultimately found the missing client materials that formed the basis for the grievance only after a more thorough search, once the Special Master to the disciplinary proceeding suggested he should look again. When asked about his vigorous defense of the disbarment proceedings, Robbins acknowledged that there appeared to be no defense to the case and excused the written denials initially filed by his counsel as "standard lawyering." When asked about whether he lied and thus perjured himself during the proceedings, Robbins appeared to prevaricate, answering that he "did not give the full statement," and calling his testimony at the proceeding that he paid the runner for his investigative services a "misrepresentation," and noting that he was never charged with perjury.

Robbins's testimony at the formal hearing, just as it was at the informal hearing, was equivocal with respect to demonstrating a recognition of the wrongdoing that resulted in disbarment. An applicant's lack of candor to the Board is evidence to support the conclusion that he fails to possess the requisite integrity and character to be a member of the Bar. See *In re Baska*, 281 Ga. 676, 677 (1) (641 SE2d 533) (2007); *In re Beasley*, 243 Ga. 134, 136 (2) (252 SE2d 615) (1979). Further, since the burden of proof with respect to the requisite

8

character and fitness to practice law is upon the applicant, "[d]oubt of consequence, of necessity, must be decided in favor of the public's protection." (Citation and punctuation omitted.) *In re Lubonovic*, 248 Ga. 243, 244 (1) (282 SE2d 298) (1981).

With respect to the element of positive action, evidence of rehabilitation included testimony that Robbins is active in his temple, but that activity consisted primarily of Torah studies in which he participated, in some degree, before the disbarment proceedings. In fact, evidence was presented that Robbins increased his participation in these studies in 1997, at the time the complaint for which Robbins was disbarred was filed, and yet he testified untruthfully at that hearing. Based on the testimony presented, it appears that certain trips he took with his temple were primarily for his own enjoyment and involved minimal service to others. He testified he had volunteered to give one or more interfaith tours of his temple to Presbyterian youth, that he has been involved in fundraising efforts that supported community projects for the Kiwanis Club, and that he had served others through his involvement with counseling patients with Gillian-Barre Syndrome. While these activities are commendable, they are not enough to establish rehabilitation in this case since

this evidence is offset by the applicant's failure to meet the burden of proof with respect to other elements of rehabilitation, such as candor and credibility, as well as appreciation and insight into why his previous conduct raises fitness concerns. Further, "[m]erely showing that an individual is now living as and doing those things he or she should have done throughout life" does not demonstrate rehabilitation. See *In re Cason*, 249 Ga. 806, 808-809 (294 SE2d 520) (1982).

Although several character witnesses testified in support of Robbins's application, few were familiar with the details of the conduct that led to disbarment, demonstrating that Robbins had not discussed his prior conduct with these witnesses or confided in them about his understanding of his wrongdoing. Few even knew about the issue of his testifying untruthfully at the disbarment hearing until they were informed by Robbins's counsel at the time they were requested to appear at the hearing on his application for readmission. Thus, while demonstrating good reputation, these witnesses did not support a finding of insight and appreciation into why his past acts raise concerns about his current fitness. Laurie Robbins, the applicant's wife, testified that Robbins expressed remorse to her and their children and acknowledged his wrongful

10

conduct to them prior to the disbarment hearing. Yet, we note that at the disbarment hearing, Robbins denied wrongdoing and testified untruthfully about his conduct. Thus, her testimony, and those of others, that Robbins understands what he did in the past was wrongful and that they believe he would not repeat these mistakes is unconvincing.[4]

Finally, Robbins asserts the decision of the Board in this case is inconsistent with its recommendations in prior readmission cases that are, according to Robbins, essentially identical to his. In none of these previous cases, however, is there any discussion of evidence of prior false statements to the Board during the disbarment proceedings or any mention of the applicant's lack of candor with the Board. See *In re Friedberg*, 286 Ga. 472 (689 SE2d 312) (2010) (noting, among other things, more than 1,400 hours of community

---

[4] In recognition of his stated disability as a result of suffering from the effects of Guillain-Barre Syndrome, Robbins was offered the opportunity to discontinue and reconvene the hearing on a second day but he declined and elected to proceed to conclusion. After the hearing, however, Robbins submitted a Motion to Open Evidence on the ground that his physical impairment from Guillain-Barre Syndrome adversely impacted his ability to testify effectively during the hearing due to fatigue. He attached an affidavit in which he attempted to restate his remorse, understanding, and assumption of responsibility for the unethical professional conduct involved in each of the disciplinary actions brought against him prior to the disbarment proceeding, as well as the conduct that resulted in disbarment. We agree with the hearing officer that the affidavit not only explained significant portions of his testimony during the hearing but also changed and supplemented it. We have considered the affidavit in our appellate review of the case.

service and assumption of leadership roles in various non-profit and religious organizations); *In re Calhoun*, 286 Ga. 471 (689 SE2d 311) (2010); *In re Siegelman*, 285 Ga. 817 (683 SE2d 595) (2009) (noting, in addition to extensive religious studies, volunteer work assisting Jewish inmates and other community service through his synagogue).

"Generally, if there is any evidence to support the Board's decision regarding the fitness of a Bar applicant, it will be upheld. Nonetheless, the ultimate decision regarding a Bar candidate's fitness to practice law is made by this Court." (Citations omitted.) *In re Spence*, supra, 275 Ga. at 204. The hearing officer found Robbins's responses at the hearing "are inconsistent with the fundamental constructs of rehabilitation." The Board adopted these findings. Our independent review of the record confirms the conclusion that Robbins did not meet his burden of proving the requisite integrity, character, and moral fitness required for readmission to the Georgia Bar. Therefore, we affirm the Board's decision to deny Robbins's application.

Certificate of Fitness for Readmission denied. All the Justices concur, except Nahmias, J., not participating.

12

Decided March 28, 2014 – Reconsideration denied April 17, 2014.

Certification of fitness to practice law.

Wilson, Morton & Downs, James E. Spence, Jr., for appellant.

Sarah E. Lockwood, Samuel S. Olens, Attorney General, Stefan E. Ritter, Rebecca S. Mick, Senior Assistant Attorneys General, for Office of Bar Admissions.