316 Ga. 474
FINAL COPY

S23Z0402.  IN THE MATTER OF DAVID ROBERSON.

PER CURIAM.

This is an appeal from a final order of the Board to Determine

Fitness of Bar Applicants (the "Board") denying an application for

readmission to the State Bar of Georgia (the "State Bar") filed by

David Roberson, who was disbarred in 2001 for multiple violations

of the Georgia Rules of Professional Conduct.[1]  Roberson argues that

the record demonstrates by clear and convincing evidence that (1)

---

[1] Roberson was disbarred on April 5, 2001.  In 2021, Roberson applied for readmission to the State Bar by submitting to the Board an Application for Certification of Fitness to Practice Law.  On October 7, 2021, the Board conducted an informal conference to determine Roberson's fitness to practice law.  Following the informal conference, the Board issued a Tentative Order of Denial, and Roberson timely requested a formal hearing.  The Board provided Roberson with the specifications for the denial on February 14, 2022, which Roberson answered on March 8, 2022.  On April 25, 2022, this Court appointed a hearing officer, and a formal hearing was held on August 10, 2022.  On October 14, 2022, the hearing officer issued a report and recommendation, recommending that Roberson's application be denied.  On November 10, 2022, the Board adopted the hearing officer's recommendation and issued its final order denying Roberson's application.  Roberson timely filed his notice of appeal in this Court.

he is rehabilitated from the conduct for which he was disbarred; (2) he appreciates the scope and harm of the conduct for which he was disbarred; and (3) he has satisfied the reinstatement condition established by this Court. For the reasons that follow, we conclude that the evidence supports the Board's decision to deny Roberson's certification and affirm.

1. The record shows that Roberson was admitted to the State Bar in 1980. In 2001, this Court disbarred Roberson for his mishandling of a medical malpractice case. See *In the Matter of Roberson*, 273 Ga. 651, 652-656 (544 SE2d 715) (2001). This Court concluded that the State Bar had shown by clear and convincing evidence that Roberson violated multiple standards of former Bar Rule 4-102 (d)[2] by improperly issuing checks from his client's

_____

[2] Specifically, this Court concluded that Roberson violated the following standards of former Bar Rule 4-102 (d):

4 (a lawyer shall not engage in professional conduct involving dishonesty, fraud, deceit, or wilful misrepresentation); 30 (except with the written consent of or written notice to his client after full disclosure a lawyer shall not accept or continue employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property or personal interests); 31 (a) (a lawyer shall not enter into

2

settlement funds to himself, his co-counsel, and nonparties without the court's approval of the final settlement; knowingly inflating the value of the client's future medical expenses in the settlement papers he filed with the court in order to justify the attorney fees he

an agreement for, charge, or collect an illegal or clearly excessive fee); 31 (d) (2) (upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the following: (i) the outcome of the matter; and, (ii) if there is a recovery: (aa) the remittance to the client; (bb) the method of its determination; (cc) the amount of the attorney fee; and (dd) if the attorney's fee is divided with another lawyer who is not a partner in or an associate of the lawyer's firm or law office, the amount of fee received by each and the manner in which the division is determined); 36 (a lawyer shall not continue multiple employment if the exercise of his independent professional judgment on behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under Standard 37); 44 (a lawyer shall not without just cause to the detriment of his client in effect wilfully abandon or wilfully disregard a legal matter entrusted to him); 61 (a lawyer shall promptly notify a client of the receipt of his funds, securities or other properties and shall promptly deliver such funds, securities or other properties to the client); 63 (a lawyer shall maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and promptly render appropriate accounts to his client regarding them); and 65 (A) (a lawyer shall not commingle his client's funds with his own, and shall not fail to account for trust property, including money and interest paid on the client's money, if any, held in any fiduciary capacity).

Id. at 651.

had already paid to himself and his co-counsel; collecting an excessive fee;[3] failing to provide the client with a written statement detailing the contingency fee arrangement; willfully disregarding legal matters entrusted to him by failing to attend the first settlement hearing and failing to establish a trust for the client's children; failing to disclose client conflicts and personal financial interests; and failing to promptly deliver client funds and maintain adequate records of the settlement funds received. See id. This Court also imposed as a condition for reinstatement that Roberson "make full restitution to the estate of all moneys he received in regard to his representation of the estate." Id. at 656.

In 2021 — twenty years after his disbarment — Roberson applied for readmission to the State Bar by submitting to the Board his Application for Certification of Fitness to Practice Law. In his application, Roberson described the circumstances leading to his disbarment as an "[i]mproper handling of proceeds from a personal

---

[3] In his answer to the State Bar's specifications, Roberson admitted paying himself and his co-counsel approximately $2,333,000 from the client's $3,325,000 cash settlement.

injury recovery," and disclosed that he had settled a legal malpractice claim filed against him by the client's estate for $449,385.26. Roberson also submitted to the Board a statement of rehabilitation, in which he stated that he "fully accept[ed] responsibility for [his] past conduct." In his statement, Roberson also described his work experience and community service since his disbarment, which included teaching law and remedial mathematics courses and becoming involved in his church and other nonprofit organizations. However, Roberson omitted in his statement any mention of the specific conduct that led to his disbarment or the harm his conduct caused his client and her children.

After receiving his application, the Board requested that Roberson participate in an informal conference. At the informal conference, Roberson mischaracterized the circumstances leading to his disbarment as an issue over calculating attorney fees, explaining that his co-counsel incorrectly advised him that the attorney fees collected should be based on the total amount the client was to collect rather than the present cash value, which "turned out not to

be the right thing to do." In his explanation, Roberson failed to mention that he misappropriated his client's settlement funds, engaged in dishonest behavior with the court, and abandoned legal matters entrusted to him. Further, when asked if he would do anything differently if he could go back to that time period, Roberson responded that he would have told his co-counsel that "the attorney's fee [should be] based on the present cash value." When the Board further questioned Roberson about the role he believed his co-counsel played in his disbarment, Roberson responded:

> I was the lawyer, I was retained by the family, and it was my responsibility. No matter what I delegated to [my co-counsel], I should have . . . looked at that myself. . . . I take all the blame upon myself.

The Board also asked Roberson whether he believed the legal malpractice settlement constituted full restitution and whether he believed the approximately $800,000 he retained as a fee after paying the settlement was fair. Roberson responded that he had not given "a whole lot of thought" to whether the settlement constituted full restitution, but that he believed "the estate was made whole"

6

because "the lawyers agreed that [the settlement] would be sufficient." Roberson was unable to unequivocally answer the question about whether the fee he retained was fair, stating, "It would have been fair to get 40 percent of whatever the present cash value of the settlement was." Further, Roberson incorrectly stated that his co-counsel was the one who filed the settlement papers with the court and that the court had approved the settlement before he paid himself the attorney fees.

Following the informal conference, the Board issued a tentative denial of Roberson's application, finding that Roberson "failed to carry [his] burden of establishing that [he] possess[es] the requisite character and fitness for admission to the practice of law in Georgia." The Board further explained that Roberson's record "evidences a lack of insight and rehabilitation," and that it was unable to confirm whether he had made full restitution to the estate.

After receiving the Board's tentative denial, Roberson timely requested a formal hearing, and the Board served Roberson with the specifications for the tentative denial. In the specifications, the

7

Board stated that Roberson improperly characterized his misconduct as "a disagreement with [co-counsel] over . . . attorney's fees," made multiple statements to the Board that "w[ere] not accurate," and "did not accept responsibility for [his] own actions that were done independently of [co-counsel]." Further, the Board asserted that Roberson "failed to show any understanding or remorse" for his past actions and "failed to show rehabilitation."

In his answer to the Board's specifications, Roberson denied the Board's allegation that he had not shown remorse for his past actions or proof of rehabilitation. Roberson further stated that he was "not seeking exoneration" by "shifting the blame from [himself] to [his co-counsel]" and that, when he made incorrect statements to the Board, he was "relating what [he] recalled of the incident, more than 20 years ago."

At the formal hearing, Roberson testified on his own behalf, explaining that he felt "ashamed" of what happened and that "there was no way [he] was trying to avoid [his] responsibility" by blaming his co-counsel. Roberson testified about his involvement in his

8

community since his disbarment but again failed to explain the specific conduct that led to his disbarment. On cross-examination, Roberson was asked about his failure to set up the trust for the client's children. Roberson explained the purpose behind setting up such a trust without explaining why he never established the trust or how this harmed the client and her children. Roberson also introduced into evidence letters of support for his reinstatement from several attorneys, including the special master involved in Roberson's disbarment proceeding, which praised his good character.

On October 14, 2022, the hearing officer issued his report and recommendation that the Board should deny Roberson's application for certification of fitness. The hearing officer noted that Roberson had "taken positive action demonstrating rehabilitation" and that it was unclear whether Roberson's misstatements to the Board were due to "the natural erosion of memory" or a "matter of a lack of candor." However, the hearing officer ultimately concluded that Roberson had not met his burden of showing he was rehabilitated,

9

noting that Roberson failed to show an "appreciation of the scope and harm of his actions." Further, the hearing officer concluded that Roberson had failed to meet this Court's condition for reinstatement that he make full restitution to the client's estate.

On November 10, 2022, the Board adopted the hearing officer's report and recommendation and denied Roberson's application for certification of fitness.

2. In his first enumeration of error, Roberson asserts that the record demonstrates by clear and convincing evidence that he is rehabilitated from the conduct for which he was disbarred. Specifically, Roberson argues that he has met his burden of showing rehabilitation because the record demonstrates that, since his disbarment, he has taken responsibility for his past actions and has appreciated the harm his conduct caused; established a good reputation, as evidenced by the letters of support recommending his reinstatement; and engaged in positive action demonstrating rehabilitation, as evidenced by his teaching and ministry work. We conclude, however, that the Board did not clearly err in finding that

Roberson was not sufficiently rehabilitated.

"[A]n applicant for reinstatement as a practicing lawyer has the burden of proving by clear and convincing evidence that [he] has been sufficiently rehabilitated." *In the Matter of Davis*, 307 Ga. 276, 279 (834 SE2d 93) (2019) (citation and punctuation omitted). To show rehabilitation,

> the applicant is required by the Board to produce evidence of, among other things, the taking of responsibility for past conduct, insight and appreciation for why the conduct raises fitness concerns, candor with the Board, good reputation and assurances of a desire and intention to conduct one's self in an exemplary fashion in the future, and positive action demonstrating rehabilitation by things such as occupation, religion, or community or civic service.

*In re Robbins*, 295 Ga. 64, 67 (2) (757 SE2d 54) (2014). Further, "if there is any evidence to support the Board's decision to deny certification, [this Court] will uphold it." *Davis*, 307 Ga. at 280 (citation and punctuation omitted).

Here, ample evidence supported the Board's conclusion that Roberson was not sufficiently rehabilitated to be reinstated to

11

practice law. Although Roberson made blanket statements throughout the proceedings that he "blamed" himself for his disbarment, he failed to demonstrate that he has taken responsibility for his actions and appreciates the harm his conduct caused and why it raised fitness concerns. Roberson repeatedly mischaracterized the circumstances leading to his disbarment as an issue with co-counsel over calculating appropriate attorney fees without adequately addressing his own unethical and dishonest conduct and how the client and her children were harmed by his behavior. "This Court does not countenance such dishonesty and blame shifting in those who seek to practice law in the State of Georgia." *Davis*, 307 Ga. at 280 (affirming the Board's decision to deny reinstatement where the applicant showed an "inability to take responsibility for her prior misdeeds" by shifting the blame for her misconduct to her clients). See also *Robbins*, 295 Ga. at 68 (2) (affirming the Board's decision to deny reinstatement where the applicant "was equivocal with respect to demonstrating a recognition of the wrongdoing that resulted in disbarment"); *In the*

12

*Matter of Lee*, 275 Ga. 763, 764 (571 SE2d 720) (2002) (affirming the Board's decision to deny reinstatement, concluding that the applicant "has shown no remorse for his conduct and continues to justify, minimize, or blame others," which "does not add up to a showing of rehabilitation by clear and convincing evidence"). Moreover, although Roberson argues that any misstatements he made during the proceedings were due to a lapse in his memory, rather than a lack of candor, Roberson continued to make misleading and evasive statements in the way he characterized the events surrounding his disbarment even after the Board served him with the specifications, which detailed his past conduct and rule violations. Making such "[f]alse, misleading, or evasive answers to bar application questionnaires may be grounds for a finding of lack of requisite character and fitness." *In the Matter of Odion*, 314 Ga. 427, 429 (2) (877 SE2d 182) (2022) (citation and punctuation omitted).

Further, although the several letters of support Roberson introduced into evidence may demonstrate that he has a good

reputation, and his teaching and ministry work since his disbarment may show that Roberson has engaged in positive action toward rehabilitation, this is "not enough to establish rehabilitation in this case since this evidence is offset by [Roberson's] failure to meet the burden of proof with respect to other elements of rehabilitation, such as candor and credibility, as well as appreciation and insight into why his previous conduct raises fitness concerns." *Robbins*, 295 Ga. at 68 (2). Moreover, "[t]o the extent that the evidence of good character and community service presented by [Roberson] could have raised a question about the extent of [his] rehabilitation, any doubts about [his] rehabilitation are resolved in favor of protecting the public rather than reinstating [him] to the practice of law." *Davis*, 307 Ga. at 280. Accordingly, Roberson's claim that the Board clearly erred in concluding that he had not established rehabilitation fails.

3. In his second enumeration of error, Roberson asserts that the record demonstrates by clear and convincing evidence that he appreciates the wrongfulness of his conduct and the harm his

conduct caused. As this is an element of rehabilitation, see *Robbins*, 295 Ga. at 68 (2), we have already addressed Roberson's failure to demonstrate his appreciation for the wrongfulness of his conduct and the harm it has caused in Division 2, and Roberson asserts no new arguments in this enumeration. Accordingly, this claim fails.

4. Finally, Roberson asserts that the record demonstrates by clear and convincing evidence that he has satisfied the reinstatement condition requiring him to make full restitution to his client's estate. According to Roberson, he has satisfied this condition because he "voluntarily made restitution making the estate whole" by settling the legal malpractice suit filed against him for approximately $450,000. We disagree.

The record shows that, following the legal malpractice settlement, Roberson has retained approximately $800,000 from his representation of his client. Thus, he has not satisfied our condition that he make "*full restitution* to the estate of *all moneys* he received in regard to his representation of the estate." *Roberson*, 273 Ga. at 656 (emphasis supplied). Accordingly, we agree with the Board that

15

Roberson has failed to satisfy his condition for reinstatement and affirm the Board's denial of his application for certification of fitness. See *In the Matter of Bartko*, 312 Ga. 630, 631 (864 SE2d 39) (2021) (affirming the Board's decision to deny the applicant reinstatement in part because the applicant "has made little progress toward satisfying his obligation to pay restitution").

*Denial of Certification of Fitness to Practice Law affirmed. All the Justices concur.*

Decided May 31, 2023.

Certification of fitness to practice law.

*Kimberly L. Copeland*, for Roberson.

*John A. Earles, Rebecca S. Mick*, for Office of Bar Admissions.

*Christopher M. Carr, Attorney General, Bryan K. Webb, Deputy Attorney General, Russell D. Willard, Jennifer Colangelo, Senior Assistant Attorneys General*, for Board to Determine Fitness of Bar Applicants.