IN RE APPLICATION OF POIGNON.

[Cite as *In re Application of Poignon,* 132 Ohio St.3d 395, 2012-Ohio-2915.]

*Attorneys—Character and fitness—Violations of laws of the state, loss of license to practice pharmacy, failure to accept responsibility for behavior, inability or unwillingness to maintain gainful employment, neglect of financial responsibilities—Applicant is permanently precluded from reapplying for admission to practice law in this state.*

(No. 2011-1423—Submitted December 6, 2011—Decided July 5, 2012.)

ON REPORT by the Board of Commissioners on Character and Fitness of the Supreme Court, No. 492.

_____

**Per Curiam.**

{¶ 1} Daniel Paul Poignon of Monclova, Ohio, applied as a candidate for admission to the Ohio bar and applied to take the July 2011 bar exam. Expressing serious concerns about Poignon's failure to take responsibility for his crimes that resulted in felony convictions on two counts of theft of drugs and the revocation of his license to practice pharmacy, his lack of attention to his family's current financial affairs, and his failure to seek or obtain gainful employment for over three years, the Board of Commissioners on Character and Fitness recommends that Poignon's application be disapproved and that he not be permitted to reapply for admission to the Ohio bar. Poignon objects to the board's recommendation, arguing that this court should permit him to address the board's concerns and to reapply for admission to the Ohio bar. We overrule Poignon's objections and adopt the board's recommendation.

**Summary of Proceedings**

{¶ 2} In November 2010, the Toledo Bar Association admissions committee recommended that Poignon's application be disapproved based upon his felony conviction for theft of controlled substances and the resulting revocation of his Ohio State Board of Pharmacy license, neglect of his personal financial responsibilities, and his failure to accept responsibility for his mistakes.

{¶ 3} Poignon timely appealed from the admissions committee's recommendation, and the board appointed a panel to review his character, fitness, and moral qualifications. The panel conducted a hearing on May 26, 2011, at which it heard testimony from Poignon and three other witnesses who appeared in his behalf.

{¶ 4} Poignon testified that he graduated from pharmacy school and obtained his Ohio pharmacist's license in 1984. He worked at St. Vincent Hospital in Toledo for several years. In 1990 he accepted a job at McLeod Regional Hospital in South Carolina, but during his employment, other members of the pharmacy staff accused him of drug use. He stated that he had been cleared of drug use, but had been asked to resign based on allegations that he had self-prescribed a medication. Poignon claimed that an intern had written the prescription for him but that the intern later denied having done so.

{¶ 5} Following Poignon's departure from McLeod, he worked at the Florence Community College in South Carolina before returning to Ohio in 1995. In Ohio, he worked at Galion Community Hospital for a short time before accepting a position at Tiffin Mercy Hospital—where he was terminated for abusing drugs.

{¶ 6} Poignon's pharmacy career ended with his employment at Drug Corner Pharmacy in Toledo. In connection with the sale of the pharmacy to Rite Aid, the Ohio State Board of Pharmacy conducted an investigation that revealed discrepancies in the pharmacy's narcotics supply. Poignon was indicted and

pleaded no contest to two counts of theft of drugs,[1] both fourth-degree felonies, and in October 1999, he was sentenced to six months in a correctional treatment facility followed by five years of community control. Poignon successfully completed the treatment program, and his community control was terminated in 2001—approximately four years early. Thereafter, he had his criminal record expunged. But as a result of his convictions, the Ohio Board of Pharmacy revoked his license to practice pharmacy.

{¶ 7} Although Poignon claims to accept responsibility for his crimes and for losing his license to practice pharmacy, he has also offered many explanations and excuses for his conduct, leading the board to doubt his sincerity. Poignon claimed during his admissions-committee interview and his testimony before the panel that he had entered his no-contest plea because he faced a contempt charge for mistakenly missing a trial date and because his lawyer had mishandled his case. He blamed his supervisor, who he reports was convicted of similar misconduct involving controlled substances, for the missing drugs. And he claimed that virtually every pharmacist who worked at Drug Corner Pharmacy was stealing and using drugs and that such acts are common practice within the profession.

{¶ 8} Although Poignon conceded that the pharmacy board had acted within its discretion when it revoked his license, he placed some of the blame for his license revocation on his attorney, who had withdrawn approximately five days before his hearing. He admitted, however, that he had not requested a continuance of the hearing or even notified the board that his attorney had recently withdrawn.

{¶ 9} Poignon's employment history as a pharmacist shows that his use and abuse of prescription drugs spanned at least seven years. The evidence

---

1. Although the board report repeatedly states that Poignon pleaded guilty to these charges, the record reflects that he entered a no-contest plea.

demonstrates, however, that he successfully completed a course of drug treatment as part of his criminal sentence, and it does not appear that he has had any further incidents of substance abuse.

{¶ 10} In addition to its concerns about Poignon's history of drug use and his felony theft convictions, the board also expressed concern about his neglect of his family's financial affairs. Despite his family's financial problems, at the time of his hearing in May 2011, Poignon had not been employed since April 2008, though he had occasionally done odd jobs for neighbors. Following his release from drug treatment in 2000, he held several short-term jobs from which he had voluntarily resigned. He had also worked for a solo practitioner while in law school and reported on his bar application that he had left for lack of work. That employer, however, reported to the National Conference of Bar Examiners that he was terminated for lack of experience. Poignon testified that he had never been told that his performance was unsatisfactory, and he attributed the employer's response to a personality conflict with the employer's mother, who served as the office manager. Thomas Matuszak, formerly of Roetzel & Andress, testified that Poignon had worked as a paralegal for that firm during law school. He stated that he had never had any reason to doubt Poignon's honesty and that he believed that Poignon had grown from his mistakes and was now able to exercise good judgment.

{¶ 11} The panel found Poignon's seeming ignorance of and indifference to his family's financial affairs even more disturbing than his dismal employment history. His credit rating was poor—due in part to delinquent accounts and a poor history of paying bills on time. While Poignon identified his wife as the primary wage earner, he also admitted that she had filed for bankruptcy in 2010. He testified that he has no knowledge of the bankruptcy proceeding because it is his wife's filing and she is handling it. He believed, however, that the primary reason for the filing was to prevent foreclosure on their home.

**{¶ 12}** With respect to the foreclosure, the summons and complaint served on Poignon plainly identified him as a party defendant, advised him that he had 28 days after service of the summons to file an answer, and stated that if he failed to file an answer, a default judgment would be rendered against him. Yet Poignon, a law-school graduate when he was served with the complaint, incredibly testified before the panel that he did not believe himself to be a party to the action. He did not answer the complaint, and, consequently, a default judgment was rendered against him, though it was later vacated due to his wife's bankruptcy filing.

### Recommendation

**{¶ 13}** Expressing serious concerns about Poignon's self-serving explanations for his criminal conviction and the revocation of his license to practice pharmacy, his lack of attention to his family's current financial affairs, and his failure to seek or obtain gainful employment for over three years, the panel recommended that Poignon's application be disapproved but that he be permitted to reapply for the July 2013 bar examination.

**{¶ 14}** The board adopted the panel's findings of fact and agreed that Poignon does not presently possess the requisite character, fitness, or moral qualifications to practice law. However, it did not adopt the panel's recommendation that he be permitted to reapply. After a lengthy and intense discussion, the board concluded that Poignon's dishonest and unethical behavior during much of his 15 years as a pharmacist, the revocation of his pharmacy license, his failure—more than ten years later—to fully accept responsibility for his criminal and unprofessional conduct, his lengthy failure to seek gainful employment, and his disturbing lack of responsibility for his financial affairs demonstrate such an absence of honesty and integrity that Poignon should not be permitted to reapply for admission to the Ohio bar. In making this recommendation, the board stated its belief that the public would lose confidence

in the integrity of the legal profession if persons who have been permanently removed from other professions for disciplinary reasons were permitted admission to the bar.

**Disposition**

{¶ 15} An applicant to the Ohio bar must prove by clear and convincing evidence that he or she "possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(11)(D)(1). The applicant's record must justify "the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them." Gov.Bar R. I(11)(D)(3). "A record manifesting a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for disapproval of the applicant." *Id.* Gov.Bar R. I(11)(D)(3) and (4) provide nonexhaustive lists of factors that the admissions committee and the board must consider before making a recommendation concerning an applicant's character, fitness, and moral qualifications. Among the factors to be considered are whether the applicant has engaged in (1) a pattern of disregarding the law, (2) acts involving dishonesty, fraud, deceit, or misrepresentation, (3) neglect of financial responsibilities, and (4) conduct resulting in disciplinary action by a disciplinary agency for another profession. Gov.Bar R. I(11)(D)(3)(f), (i), (k), and (o).

{¶ 16} A prior felony conviction does not demonstrate, per se, that an applicant lacks the moral character necessary to practice law. *In re Application of Keita*, 74 Ohio St.3d 46, 48, 656 N.E.2d 620 (1995), citing *In re Application of Davis*, 38 Ohio St.2d 273, 275, 313 N.E.2d 363 (1974). But when an applicant's background includes such a conviction, the applicant bears the burden of proving that he or she is morally fit to practice law and that he or she is fully and completely rehabilitated. *Id.*

{¶ 17} Poignon concedes that he has failed to prove that he currently possesses the character, fitness, and moral qualifications necessary to practice law

in Ohio. But he objects to the board's recommendation that he be forever barred from seeking admission to the bar and requests another opportunity to demonstrate his rehabilitation to this court. He cites three cases that he claims are similar to his in which this court permitted applicants to reapply for the bar exam. Two cases involved the existence of prior criminal convictions and substance abuse, and one case involved the revocation of the applicant's teaching license.

{¶ 18} In the first case, *In re Application of Creighton*, 117 Ohio St.3d 253, 2008-Ohio-852, 883 N.E.2d 433, ¶ 5, 11, the applicant, a former teacher, failed to disclose in his application for law school that in his first teaching position, he had been disciplined for fraternizing with his high school students. The Ohio Department of Education later revoked the applicant's teaching permit based upon his inappropriate personal contacts and relationships with students. *Id.* at ¶ 9. Although he initially denied the allegations against him, the applicant eventually admitted that the allegations were true, accepted full responsibility for his actions, and showed genuine remorse. Id. at ¶ 24, 28-33. While recognizing that the applicant might never be able to prove his character and fitness, we recognized that he had been a young and inexperienced teacher at the time of his misconduct, and we gave him the opportunity to reapply for a future bar examination after a longer period of rehabilitation, and on the condition that he submit a positive psychological assessment. *Id.* at ¶ 37.

{¶ 19} In the second case, *In re Application of Corrigan*, 123 Ohio St.3d 173, 2009-Ohio-4183, 915 N.E.2d 300, ¶ 6-9, the applicant had a lengthy period of unstable employment, left one job following allegations that he had falsified a time card, and in addition to multiple arrests for minor incidents involving alcohol abuse, had pleaded guilty to DUI, felonious assault, and two counts of assault on a peace officer. Citing evidence of a mental or psychological disorder and an existing and untreated alcohol dependence, as well as the applicant's ambivalence toward rehabilitation, we disapproved his pending application, but left open the

possibility that he could reapply after submitting a psychiatric evaluation and an alcohol counselor's assessment to the Board of Commissioners on Character and Fitness. *Id.* at ¶ 12, 16-17.

{¶ 20} And in *In re Application of Alban*, 116 Ohio St.3d 190, 2007-Ohio-6043, 877 N.E.2d 658, ¶ 4-8, 13, we likewise disapproved the applicant's pending bar-exam application based upon a series of drug- and alcohol-related offenses, two of which occurred while the applicant was in law school. Noting the relative recentness of the applicant's abstinence and our past practice of temporarily disapproving applications to take the bar examination by such applicants in order to give them more time to prove that they have overcome their substance-abuse problems, we permitted the applicant to reapply the following year. *Id*. at ¶ 13, citing *In re Application of Olterman*, 106 Ohio St.3d 383, 2005-Ohio-5324, 835 N.E.2d 370, and *In re Application of Ralls*, 109 Ohio St.3d 487, 2006-Ohio-2996, 849 N.E.2d 36.

{¶ 21} The facts of Poignon's case, however, are distinguishable from those of *Creighton*, *Corrigan*, and *Alban.* Unlike Alban's conduct, Poignon's conduct was not the result of inexperience or youthful indiscretion. *See* Gov.Bar R. I(11)(D)(4)(a). And unlike Creighton and Corrigan, Poignon has presented no evidence that his most recent problems—his failure to accept responsibility for his crimes, the loss of his license to practice pharmacy, and his failure to be financially responsible—are the result of a psychological disorder or a substance-abuse problem. *See* Gov.Bar R. I(11)(D)(3)(e).

{¶ 22} More than ten years after his convictions for theft of drugs, Poignon continues to blame his co-workers, an alleged culture of drug use and abuse in the pharmacy profession, and poor legal representation in his criminal and licensure matters, rather than his own failings, for his criminal convictions and the loss of his license to practice pharmacy. Despite having ample time and opportunity to demonstrate his full rehabilitation, Poignon has held a series of

jobs for short periods of time, was unemployed for the three years preceding his panel hearing, and has made no appreciable efforts to obtain sustained, gainful employment. He filed for bankruptcy in 1997, has not kept up with his financial obligations since that time, and maintains that he has no knowledge of his wife's finances, except for the fact that she filed for bankruptcy in 2010. Moreover, when served with a complaint seeking to foreclose on his family home, Poignon did nothing and, inexplicably, denied to the panel that he was even a party to the action.

{¶ 23} Poignon's flouting of the standards of the pharmacy profession, his violations of the laws of this state, his ongoing failure to accept responsibility for his behavior and its consequences, his inability or unwillingness to maintain stable, gainful employment, his neglect of his own financial responsibilities, and his apparent ignorance of his own family's serious financial and legal matters constitute a persistent and ongoing pattern of bad behavior spanning at least 20 years. In light of this pattern, we agree with the board's conclusion that "the ideals of trustworthiness and honesty that are so crucial to the legal profession simply would not be served by allowing [Poignon's] admission."

{¶ 24} Accordingly, we adopt the board's findings and recommendation that Poignon's pending application be denied and that he be forever precluded from reapplying for the privilege of practicing law in this state.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, LANZINGER, and MCGEE BROWN, JJ., concur.

O'DONNELL and CUPP, JJ., not participating.

_____

Robison, Curphey & O'Connell, L.L.C., James E. Brazeau, and Sarah J. Corney, for applicant.

Vorys, Sater, Seymour & Pease, L.L.P., and Michael Thomas, for the Board of Commissioners on Character and Fitness.

_____