**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Libretti,* Slip Opinion No. 2015-Ohio-4338.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-4338

IN RE APPLICATION OF LIBRETTI.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Libretti,* Slip Opinion No. 2015-Ohio-4338.]**

*Attorneys at law—Application to register as a candidate for admission to the practice of law—Failure to prove character, fitness, and moral qualifications to practice law—Conviction of a felony—Failure to provide complete and accurate information about applicant's past—False statements, including omissions—Acts involving dishonesty, fraud, deceit, or misrepresentation—Violation of a court order—Applicant's honesty and integrity intrinsically suspect—Applicant permanently barred from reapplying for admission to the practice of law.*

(No. 2014-1555—Submitted February 25, 2015—Decided October 22, 2015.)

ON REPORT by the Board of Commissioners on Character and Fitness of the Supreme Court, No. 563.

_____

**Per Curiam.**

{¶ 1} Joseph Victor Libretti Jr. of Cleveland, Ohio, has applied to register as a candidate for admission to the practice of law in Ohio. A two-person panel of the Cleveland Metropolitan Bar Association admissions committee interviewed Libretti on June 6, 2013, made a provisional finding that he possessed the requisite character, fitness, and moral qualifications for admission to the practice of law, and recommended that his application be approved. However, the Board of Commissioners on Character and Fitness, having held a hearing at which Libretti testified and having considered Libretti's supplemental responses to his character and fitness questionnaire, recommends that Libretti's registration application be disapproved and that he be forever barred from reapplying for admission to the practice of law in Ohio. In support of that recommendation, the board cites Libretti's 1992 federal conviction under the "kingpin" statute for his role in organizing, managing, or supervising a criminal drug enterprise, his involvement in the sale of "spice"—a mix of shredded plant material and man-made chemicals that has been touted as a legal alternative to marijuana—following his release from prison, and his failure to fully disclose certain aspects of his postrelease conduct as required by the terms of his supervised release and by the application to register as a candidate for admission to the practice of law in Ohio.

{¶ 2} Libretti initially objected to the board's findings of fact and its recommendation that he be forever precluded from seeking admission to the Ohio bar but has since conceded that he failed to carry his burden of proving that he presently possesses the requisite character, fitness, and moral qualifications to practice law. Thus, the sole issue before this court is whether Libretti should ever be permitted to reapply as a candidate for admission to the Ohio bar. For the reasons that follow, we conclude that he should not.

{¶ 3} As of the time of the board hearing and Libretti's supplemental responses to his character and fitness questionnaire, Libretti was expected to

2

graduate near the top of his class at the Cleveland Marshall College of Law in December 2014. More than two dozen character letters demonstrate that he is well liked by fellow students, professors, attorneys, and both past and present employers, who describe him as talented, intelligent, and hard working. While it appears that Libretti may possess an advocate's skills, his conduct during his supervised release and throughout this admissions process caused the board to question whether he has been fully rehabilitated and whether he will ever possess the requisite character, fitness, and moral qualifications to practice law in Ohio.

{¶ 4} In 1992, Libretti pleaded guilty to a felony count of engaging in a continuing criminal enterprise to distribute marijuana and cocaine in violation of 21 U.S.C. 848. Multiple other charges against him were dropped and he was sentenced to 20 years of imprisonment followed by five years of supervised release. In early 2008, after serving 16 years, he was released from prison and sent to a halfway house in Casper, Wyoming. He completed his supervised release in May 2013—approximately 18 months before he was expected to graduate from law school.

{¶ 5} Shortly after his release from prison and while he was on supervised release in Wyoming, Libretti began engaging in morally (if not legally) questionable conduct involving spice, the man-made marijuana alternative. At first, he used his credit card to finance the spice business of his roommate—a convicted drug dealer whom he had met in a halfway house after his release from prison—and ran the proceeds of that business through his bank account to avoid having them garnished to satisfy his roommate's child-support obligations. Libretti later stepped in to manage the business on a temporary basis when his roommate went to prison for a probation violation. But shortly after his roommate's release, authorities searched the home that the two men shared and seized quantities of spice, chemicals to manufacture spice, and $7,200 in cash. The following month, his roommate committed suicide, and Libretti continued his business—selling spice

and its components to buyers in Wyoming even after he moved to Ohio in August 2010 to attend law school. He also recruited a known methamphetamine dealer to assist him in the endeavor.

{¶ 6} The terms and conditions of Libretti's supervised release required him to report his income to his probation officer and prohibited him from associating with persons engaged in criminal activity and with convicted felons. Because his roommate had set up a trust for the business revenue and advised Libretti that there was no need to report the income as the money legally belonged to the trust, Libretti chose not to report his spice income to his probation officer. Although he told his admissions-committee interviewers that he had fully complied with the terms of his supervised release, he later admitted that his failure to report the significant income generated by his spice business and his association with a known methamphetamine dealer violated those terms.

{¶ 7} In November 2010, Libretti learned that the United States Drug Enforcement Administration ("DEA") had issued a public notice that it would be scheduling five chemicals used to make spice, including one called JWH-018. He testified that he set out to liquidate his supply of JWH-018 before the DEA took action. But three months into his claimed liquidation, he ordered an additional $17,500 of that substance for a customer only to cancel the order when he learned that the DEA's scheduling order was imminent. The next day, March 1, 2011, the DEA scheduled JWH-018 and four other chemicals as controlled substances, making it illegal to possess or sell them in the United States.

{¶ 8} After the DEA order went into effect, Libretti gathered the spice and the JWH-018 that remained in his possession, packaged them in a U.S. Mail priority mailing box, and addressed it to his lawyer in Casper, Wyoming. Instead of mailing the package to his attorney or finding a safe and legal method to dispose of the chemicals, Libretti placed the package in a storage closet at his Cleveland, Ohio

4

apartment building. His continued possession of this controlled substance violated the law and the terms of his supervised release.

{¶ 9} In late March 2011, Libretti was indicted in Wyoming on a single count of conspiracy to distribute more than 50 grams of methamphetamine, though he was later acquitted. After his Cleveland apartment had been searched and he had instructed his attorney to request immunity, he directed authorities to the box of spice and JWH-018 that remained in his apartment-building storage closet.

{¶ 10} Although Libretti repeatedly claimed that his spice business was completely legal, he did not disclose its existence on his registration application in response to Question 23C, which asked, "Have you ever been engaged in your own business or been a director, an officer, a more than five percent shareholder, a partner or a joint venture [sic] in any business enterprise?"). He did, however, mention his involvement in an "herbal incense" business during his admissions-committee interview. But even then, he failed to disclose that he had recruited a known methamphetamine dealer to distribute his product, had continued to run the enterprise after his roommate died, had used a trust to disguise income, and had possessed JWH-018 after it became a controlled substance.

{¶ 11} Libretti also failed to disclose a 2011 request for immunity on his registration application in response to Question 20(B), which asked, "Have you ever been granted immunity from prosecution?" He testified that although he had requested immunity, he had never received any confirmation that his request had been granted, and therefore he concluded that no disclosure was required. Given an April 6, 2011 DEA report stating that the assistant United States attorney had received approval to grant Libretti immunity with regard to the drug evidence seized from his Cleveland apartment on March 30, 2011, and Libretti's "highly tuned distrust" of prosecutors, law-enforcement personnel, and governmental agencies, the board did not believe his claimed ignorance. And the supplemental answers that Libretti submitted in May 2014 to address the immunity issue proved

to be even less informative than his testimony, which the board deemed "evasive and not believable." In the end, the board determined that Libretti's omissions throughout the admissions process were deliberate.

{¶ 12} The board was also struck by what it described as Libretti's "amoral viewpoint" regarding his criminal activities and his subsequent spice operation. One of his admissions-committee interviewers testified that while Libretti described his conduct as stupid and foolish and recognized the negative impact it had had on his own life and the lives of his family members, he expressed no real concern about the harm that his conduct had visited upon the countless others who were affected by his past criminal activities or his sale of spice.

{¶ 13} Libretti has also engaged in multiple appeals of virtually all aspects of his criminal sentence except the statutory minimum prison term and has filed numerous civil actions challenging various searches and forfeitures of his property. *See United States v. Libretti*, 28 Fed.Appx. 754, 756-757 (10th Cir.2001) (noting Libretti's persistent challenging of his guilty plea and the forfeiture aspect of his sentence and citing eight separate cases, including six civil actions, in which he raised those challenges—not counting the issues immediately before the court or Libretti's direct appeal challenging the forfeiture order, which was affirmed in *United States v. Libretti*, 38 F.3d 523 (10th Cir.1994), and *Libretti v. United States*, 516 U.S. 29, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995)). While the board recognized that an individual is entitled to pursue the vindication of his rights in a court of law, it believed that Libretti "may have crossed the line into litigiousness," given that many of the claims were duplicative and were dismissed, some on res judicata or collateral-estoppel grounds. The board found that this pattern of repetitive litigation did not reflect a person who has respect for the law, but rather a person who uses it as a weapon to harass others.

**Disposition**

6

**{¶ 14}** An applicant to the Ohio bar must prove by clear and convincing evidence that he or she "possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(11)(D)(1). The applicant's record must justify "the trust of clients, adversaries, courts, and others with respect to the professional duties owed to them." Gov.Bar R. I(11)(D)(3). "A record manifesting a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for disapproval of the applicant." *Id.* And when an applicant's background includes a felony conviction, the applicant bears the burden of proving not only that he is morally fit to practice law but also that he is fully and completely rehabilitated. *In re Application of Poignon*, 132 Ohio St.3d 395, 2012-Ohio-2915, 972 N.E.2d 580, ¶ 16, citing *In re Application of Keita*, 74 Ohio St.3d 46, 48, 656 N.E.2d 620 (1995), citing *In re Application of Davis*, 38 Ohio St.2d 273, 275, 313 N.E.2d 363 (1974).

**{¶ 15}** Gov.Bar R. I(11)(D)(3) provides a nonexhaustive list of factors to be considered in assessing an applicant's character and fitness for admission to the bar. Among the enumerated factors, the following are relevant here: (1) commission or conviction of a felony, (2) failure to provide complete and accurate information concerning the applicant's past, (3) false statements, including omissions, (4) acts involving dishonesty, fraud, deceit, or misrepresentation, and (5) violation of a court order. *See* Gov.Bar R. I(11)(D)(3)(a), (g), (h), (i), and (m).

**{¶ 16}** Libretti's criminal record is significant. Although he was charged with multiple offenses, he pleaded guilty to just one charge after a week of trial. According to the United States Court of Appeals for the Tenth Circuit, he received a favorable plea agreement despite what the court described as "overwhelming evidence of his guilt" and was sentenced to 20 years in prison—the minimum sentence for the sole offense for which he was convicted. *United States v. Libretti*, 38 F.3d at 529-530. After serving 16 years in prison for running a criminal drug enterprise, he engaged in a pattern of conduct that may have been technically legal

but was morally questionable, that mirrored the conduct that led to his conviction (though with substances that were apparently legal at the time), and that violated at least three terms of his court-ordered supervised release. Yet throughout this proceeding, Libretti has touted the facts that he was never charged with a violation of his supervised release and that he was "successfully discharged." In truth, he violated multiple terms of his supervised release but did not get caught. We expect more from candidates seeking admission to the bar.

{¶ 17} Rather than fully disclosing the mistakes that he has made since his release from prison, Libretti has intentionally concealed and misrepresented them during every step of the admissions process.

{¶ 18} While Libretti has acknowledged that his honesty and credibility are relevant in determining whether he possesses the character and fitness necessary to practice law, he has also espoused the view that the onus was on the questioner to ask the right questions before he would give a complete answer. Such a view is the antithesis of the honesty and candor that the admissions process demands.

{¶ 19} We find that the conduct identified by the board raises serious concerns about Libretti's ability to satisfy at least four of the ten essential eligibility requirements for the practice of law, including (1) the ability to exercise good judgment in conducting one's professional business, (2) the ability to conduct oneself with a high degree of honesty, integrity, and trustworthiness in all professional relationships and with respect to all legal obligations, (3) the ability to conduct oneself with respect for and in accordance with the law and the Ohio Rules of Professional Conduct, and (4) the ability to conduct oneself professionally and in a manner that engenders respect for the law and the profession. *See* Supreme Court of Ohio, Definitions of Essential Eligibility Requirements for the Practice of Law, Requirement Nos. 3, 4, 5, and 10, http://www.supremecourt.ohio.gov/AttySvcs/admissions/pdf/ESSENTIAL_ELIGIBILITY_REQUREMENTS.pdf.

8

**{¶ 20}** We have recognized that "[a]n applicant whose honesty and integrity are intrinsically suspect cannot be admitted to the Ohio bar." *In re Application of Aboyade*, 103 Ohio St.3d 318, 2004-Ohio-4773, 815 N.E.2d 383, ¶ 16, citing *In re Application of Cvammen*, 102 Ohio St.3d 13, 2004-Ohio-1584, 806 N.E.2d 498, ¶ 22. For that reason, in *Aboyade* we permanently denied the applicant admission to the Ohio bar based on a pattern of dishonest conduct that included falsification of law-school transcripts, false testimony under oath, disbarment in another state, and the applicant's failure to disclose material facts in her original and supplemental applications. *Aboyade* at ¶ 10-16. Likewise, in *Cvammen*, we forever barred an applicant who gave inconsistent testimony throughout the admissions process in an effort to explain away questionable conduct that resulted in his forced resignation from employment. *Cvammen* at ¶ 18-22. Because we find that Libretti's ethical infractions are longstanding and so permeate the admissions process that his honesty and integrity are shown to be intrinsically suspect, we conclude that we must permanently deny his application to register as a candidate for admission to the Ohio bar.

**{¶ 21}** Accordingly, we overrule Libretti's objections, adopt the board's findings of fact, disapprove Libretti's pending application, and forever bar him from reapplying for the privilege of practicing law in this state.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, and KENNEDY, JJ., concur.

FRENCH and O'NEILL, JJ., concur in part and dissent in part.

_____

**FRENCH, J., concurring in part and dissenting in part.**

**{¶ 22}** Joseph Victor Libretti Jr. concedes that he has not carried his burden of demonstrating that he presently possesses the requisite character, fitness, and moral qualifications for admission to the practice of law, and I concur with the

disapproval of his pending application. But I respectfully dissent from the majority's judgment to forever bar Libretti from reapplying for the privilege of practicing law in this state.

{¶ 23} To be sure, Libretti's record is troubling. It contains a serious felony conviction, morally questionable participation in and operation of a spice business following Libretti's release from prison, concealment of information related to that business in violation of the terms of his supervised release, and a lack of honesty and candor with respect to potentially damaging information during the admissions process. Nevertheless, I cannot agree that Libretti deserves "what is essentially a death sentence" to the legal career to which he aspires. *In re Application of Corrigan*, 47 Ohio St.3d 32, 37, 546 N.E.2d 1315 (1989) (Sweeney, J., dissenting).

{¶ 24} A prior felony conviction does not necessarily demonstrate that an applicant lacks the present moral character necessary to practice law, *In re Application of Poignon*, 132 Ohio St.3d 395, 2012-Ohio-2915, 972 N.E.2d 580, ¶ 16, let alone that the applicant will *never* possess the necessary character, *see In re Application of Davis*, 61 Ohio St.2d 371, 403 N.E.2d 189 (1980) (approving, over the recommendation of the Board of Commissioners on Character and Fitness, an applicant who had been convicted of a felony). An applicant with a prior felony conviction, however, bears the additional burden of proving full and complete rehabilitation. *Poignon* at ¶ 16, citing *In re Application of Keita*, 74 Ohio St.3d 46, 48, 656 N.E.2d 620 (1995), citing *In re Application of Davis*, 38 Ohio St.2d 273, 275, 313 N.E.2d 363 (1974). That rule manifests the common belief that a person who has committed bad acts in the past may be rehabilitated to the extent necessary to engage in the practice of law. Imposing a permanent bar upon Libretti because he has not yet demonstrated complete rehabilitation and because he does not *presently* possess the requisite character, fitness, and moral qualifications is antithetical to that belief.

**{¶ 25}** Libretti's postrelease conduct and lack of candor during the admissions process weigh against a finding that Libretti is fully and completely rehabilitated. They also independently weigh against a finding that he presently possesses the requisite character, fitness, and moral qualifications for admission to the bar. As with a felony conviction, however, dishonesty during the admissions process does not necessarily require permanent denial of the opportunity to apply for bar admission. Even where an applicant's record includes both prior convictions and instances of dishonesty and deceit in the admissions process, we have permitted reapplication after a specified period and, in some instances, upon compliance with stated conditions. *See In re Application of Worthy*, 136 Ohio St.3d 142, 2013-Ohio-3018, 991 N.E.2d 1131, ¶ 9, 14; *In re Application of Corrigan*, 123 Ohio St.3d 173, 2009-Ohio-4183, 915 N.E.2d 300, ¶ 9, 13, 17.

**{¶ 26}** We have declined to impose a draconian, permanent bar to admission when we have not been persuaded that the applicant "completely lacks rehabilitation potential." *In re Application of Holzhauser*, 66 Ohio St.3d 43, 46, 607 N.E.2d 833 (1993); *see also In re Application of Clark*, 135 Ohio St.3d 252, 2013-Ohio-732, 985 N.E.2d 1266, ¶ 14 (finding a "glimmer of hope" that the applicant could mature and learn from past mistakes, based on "belated candor in acknowledging his struggle to be honest").

**{¶ 27}** Here, Libretti has accepted responsibility for the criminal conduct that led to his lengthy prison sentence and has been open with law-school classmates, professors, and employers about that conduct and its consequences. He has spoken publicly about his past to lawyers and judges and has served as a presenter at anti-drug and health-awareness programs. Libretti has also acknowledged, albeit belatedly, his lack of honesty in the admissions process and admits that he should have been open and candid about his spice business. While Libretti's acknowledgment of his shortcomings in no way undermines their seriousness, it does indicate the capacity for rehabilitation.

**{¶ 28}** In determining whether Libretti might one day prove that he possesses the necessary qualities for admission to the bar, we should not downplay Libretti's stellar academic performance and the numerous endorsements of his ethical and professional conduct in the workplace that appear in the record. An applicant's performance in past and current professional endeavors, including his performance in academic pursuits and ability to function in a work environment, is highly probative of the ability to function honestly and effectively in the practice of law. *Davis*, 61 Ohio St.2d at 374, 403 N.E.2d 189. The record here contains supportive letters from Libretti's classmates, professors, and past and present employers. Of particular note, eight attorneys from the Cuyahoga County Public Defender's Office have filed an amicus brief praising Libretti's judgment, work ethic, and enthusiasm for the office's work. When the amicus brief was filed, Libretti had served as an intern in the public defender's office for over 18 months, and that office has agreed to continue supervising Libretti as a law clerk to further oversee his professional development. Letters from Libretti's supervising attorneys commend his commitment, high ethical standards, and passion and respect for the law and individual constitutional rights, as well as his special understanding of and compassion for the office's clients. In my view, the record supports the possibility that with additional time, Libretti may be able to prove that he has the necessary attributes to engage in the practice of law.

**{¶ 29}** The denial of Libretti's pending application, with an allowance that he be permitted to apply for the 2017 bar examination, would adequately protect the public and the integrity of the legal profession while not forever slamming the doors of that profession in the face of a potential asset to the Ohio bar. Of course, Libretti would still face a high hurdle in satisfying the character and fitness requirements upon reapplication, given the evidence weighing against him. It may be that in light of his past behavior, Libretti is never able to produce clear and convincing evidence that he is qualified to be a member of the Ohio bar. But in

weighing his acknowledged past transgressions against the demonstrated dedication, academic success, and professional workplace conduct that Libretti has demonstrated in recent years, I cannot agree that this court should forever deny him the opportunity to meet that burden.

{¶ 30} For these reasons, I would deny Libretti's application but allow him to apply to take the July 2017 bar examination. Accordingly, I concur in part and dissent in part.

O'NEILL, J., concurs in the foregoing opinion.

_____

Deborah Zaccaro Hoffman, for applicant.

Paul G. Crist, for the Cleveland Metropolitan Bar Association.

James F. Lentz, for amici curiae Citizens' Institute for Law and Public Policy and CURE-Ohio, in support of applicant.

Robert J. Wall, for amicus curiae Ohio Justice & Policy Center, in support of applicant.

Robert L. Tobik, John T. Martin, Erica Cunliffe, Jeffrey M. Gamso, Linda Hricko, Paul Kuzmins, Christopher Scott Maher, and Cullen Sweeney, as amici curiae, in support of applicant.

Pamela Daiker-Middaugh, Avery Friedman, C. Timothy Murphy, Amy Hollaway, Carole Heyward, Doron Kalir, Kenneth Kowalski, Stephen Lazarus, Kevin O'Neill, John Plecnik, Peter Sayegh, Daniel Dropko, Joseph Buckley, Christopher Maher, and Dennis Terez, as amici curiae, in support of applicant.

_____