In re Application of Davis.

(No. CF-74-1—Decided June 26, 1974.)

*Mr. Stanley K. Laughlin, Jr.,*\* for applicant.
*Mr. Dennis D. Grant, Mr. Richard C. Simpson* and *Mr. Theodore T. Twynham,* for the Columbus Bar Association.

*Per Curiam.* On May 2, 1973, Frederick E. Davis, Jr., filed applications for registration as a candidate for admission to the practice of law and for permission to take the bar examination. In response to question 12(a) of the application for registration as a candidate for admission, Davis stated:

"September, 1969—I was charged with breaking and entering with the intent to commit a felony. The Franklin County grand jury returned an indictment of (1) breaking and entering an inhabited dwelling in the night season; and, (2) grand larceny. In September of 1970, I entered a plea of guilty to grand larceny, and the burglary charge was dropped. In January, 1971, I was given a sentence of five years probation conditioned on my dropping out of law school, which I did. In February, 1972 I was released from probation."

Pursuant to Section 3(B) of Gov. R. I., the applications were referred to the Committee on Applicants for Admis-

---

\*Appointed to argue applicant's cause before the Court.

sion to the Practice of Law of the Columbus Bar Association. Upon consideration of the application, a personal interview of Davis and certain independent investigation, the committee recommended to this court that the application be disapproved "for the reason that the applicant's file reveals that said applicant plead guilty to a felony."

Upon receipt of the notice of the adverse recommendation of the admissions committee, and in accordance with the provisions of Section 9(D), Gov. R. I., Davis requested a hearing before the Board of Commissioners on Character and Fitness. The hearing was held on October 5, 1973, before a three-member panel of that board. The board's report was filed with this court on January 15, 1974. The report concluded that Davis was not qualified for admission to the practice of law and recommended that the court disapprove his application.

To be admitted to the bar of this state, an applicant must possess certain required educational qualifications and must demonstrate a proficiency in the law. Equally important, he must also establish his fitness and prove that he has the good moral character which an attorney at law must possess in order to faithfully fulfill the position of trust in which he is placed by his clients, by this court and by society. Section 9(H), Gov. R. I.

The paramount concern in proceedings before the Board of Commissioners on Character and Fitness is whether the applicant possesses those moral traits of honesty and integrity which will enable him to fully and faithfully discharge the duties of our demanding profession. We view such proceedings as being different from the adversary contest associated with, for example, disciplinary cases. A hearing to determine character and fitness should be more of a mutual inquiry for the purpose of acquainting this court with the applicant's innermost feelings and personal views on those aspects of morality, attention to duty, forthrightness and self-restraint which are usually associated with the accepted definition of "good moral character." Such a view commands the utmost in cooperation between

the applicant and the board, and leaves little room for the employment of doctrines which work to keep relevant information from the board. Although those devices are valid and proper in many instances, they should not be invoked before a body whose sole function is to fully determine all the facts which can logically reflect upon the wisdom of admitting an applicant with a questionable background to the practice of law.

A majority of this court is of the opinion that a prior conviction of a layman for the commission of a felony is not, per se, sufficient to show a present lack of good moral character. However, where such appears in the background of an applicant for admission to the bar, his burden of establishing his present good moral character takes on the added weight of proving his full and complete rehabilitation subsequent to the conviction. It is only fitting that proof of such rehabilitation be by clear and convincing evidence.

During the 13 months that he was on probation, Davis entered the graduate school at Ohio State University and obtained a master's degree in public administration. After his release from probation, and with the special permission of the law school, he re-entered the Ohio State University College of Law and subsequently obtained his law degree. He testified that during this period, he financed his education and was self-supporting by employment he obtained at the schools as a research assistant and other positions. The record also discloses that, since his graduation from law school, he secured a position as a social planner with the Planned Variations Program in Dayton. Nothing appears in the record to show that, since his conviction, Davis has been other than a law-abiding citizen. Furthermore, his academic achievements show a high level of educational ability and his position with the program in Dayton is one of considerable responsibility. Unfortunately, however, these laudatory accomplishments are clouded by other, equally relevant aspects of the record.

Before the board, the bar association called Thomas

276

M. Tyack, the attorney who represented Davis after his indictment, and attempted to elicit his testimony regarding that representation. Davis, through his attorney, invoked the attorney-client privilege and the board felt obligated to deny itself the benefit of that evidence. Additionally, the board found, as do we, testimonial inconsistencies and misleading explanations which convince us that Davis' counsel, Davis, or both of them, misapprehended the tenor and purpose of the proceedings, and sought to keep the board from acquiring a true, though damaging, picture with regard to Davis' prior difficulties. The telling effect of that misapprehension becomes obvious when it is realized that in a hearing of this nature, the absence of good moral character in the past is secondary to the issue of the existence of good moral character in the present—the transitional character development in between comprising the process of rehabilitation, or lack thereof. Thus, the apparent effort made before the board to evade a full disclosure of all pertinent information concerning the less important past,* has engendered significant doubts in our minds with regard to the crucially important present.

In view of all the foregoing, the application will be remanded to the Board of Commissioners on Character and Fitness, with instructions to reopen the hearing and permit the applicant to introduce current evidence concerning his present moral character. Provided, however, such hearing will be carried out only upon applicant's written request to the board, and shall not commence prior to the expiration of six months from the journalization of this order.

*Judgment accordingly.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN and P. BROWN, JJ., concur.

CELEBREZZE and W. BROWN, JJ., dissent.

---

*It should be emphasized that we consider the nature and circumstances of a past crime to be less important, not unimportant, and are not here holding that the crime could never become a major factor in determining present good moral character.