IN RE DABNEY.

[Cite as *In re Dabney,* 107 Ohio St.3d 40, 2005-Ohio-5834.]

(No. 2005–0866—Submitted June 28, 2005—Decided November 16, 2005.)

**Per Curiam.**

{¶ 1} Tami Antoinette Dabney of Akron, Ohio, Attorney Registration No. 0076509, was admitted to the Ohio bar in 2003. She is currently registered as inactive in Ohio.

{¶ 2} Dabney graduated from the University of Akron School of Law in May 2003. She applied for, took, and passed the Ohio bar examination in July 2003.

{¶ 3} In October 2003, Dabney applied for admission to the Nevada bar. While investigating her character and fitness in connection with that application, an admissions investigator with the State Bar of Nevada discovered that Dabney had not disclosed on her Nevada bar application that she had been arrested five times in 1995 for prostitution-related offenses in New York.

{¶ 4} In a December 2003 letter to the State Bar of Nevada, and in an August 2004 amendment to her Ohio bar application, Dabney acknowledged that she had indeed been arrested and convicted on five separate charges of "loitering for prostitution" between August 1995 and December 1995 in New York. She also disclosed in those documents that each time she had been arrested, she gave a false name to the authorities.

{¶ 5} Dabney had disclosed none of this information in her November 2001 application to register as a candidate for admission to the Ohio bar or in her April

2003 application to sit for the Ohio bar examination. Gov.Bar R. I(10)(B)(6) directs the Board of Commissioners on Character and Fitness to investigate "any matter brought to the attention of the Board after an applicant has been admitted to the practice of law and alleging that the applicant made a materially false statement in, or deliberately failed to disclose any material fact in connection with, the applicant's application for admission to the practice of law." In accordance with that provision, the board initiated an investigation in 2004 into Dabney's failure to disclose her New York arrests and convictions on her Ohio bar application. A three-member panel of the board held a hearing in January 2005. Dabney testified at the hearing, as did several other witnesses.

{¶ 6} The hearing testimony and the record presented to the board indicated that Dabney was 23 years old at the time of her 1995 arrests in New York. She testified that in 1994, while living in Akron, she met and fell in love with a man named Bryan Kirkland, who was from New York. When Kirkland was charged with a drug-possession offense in 1995, he asked Dabney to come to New York for a few days and engage in prostitution there. She agreed and traveled by train to New York in August 1995.

{¶ 7} Dabney was arrested the first time she walked on a New York street as a prostitute in August 1995, and her four subsequent arrests occurred in August (three days after her first arrest), October, November, and December 1995. During that time, she continued to live in Akron and traveled to New York a few days at a time to engage in prostitution. When she was arrested the first time, she was carrying a false identification card in her purse.

{¶ 8} Dabney testified at the hearing that her actions were motivated by her desire to please Kirkland and win his approval. She corresponded with him occasionally while he was incarcerated for two years beginning in 1996, and she met him when he was released from custody in 1998. She stayed with Kirkland for several weeks after that, until the relationship soured and she returned to Ohio. Dabney continued to travel to New York to visit Kirkland, and she became pregnant in November 1998. She entered law school in 2000 and graduated three years later.

{¶ 9} Once Nevada bar officials discovered the arrests in 2003, Dabney was forthcoming about her criminal record with bar officials in that state and in Ohio. Also, in June 2004, she contacted Stephanie Krznarich, a licensed independent social worker at the Ohio Lawyers Assistance Program ("OLAP"). Krznarich performed chemical-dependency and mental-health assessments and concluded that Dabney suffers from posttraumatic stress disorder and dependent-personality disorder. Dabney signed a four-year mental-health recovery contract with OLAP in July 2003 and began attending individual counseling sessions, twice-weekly Al–Anon meetings, and meetings of a domestic-violence-victims support

group. Krznarich testified that Dabney has done an "excellent job" of complying with her OLAP contract and has accepted all of OLAP's recommendations for addressing problems related to the mental and emotional abuse that she experienced during her relationship with Kirkland, as well as the domestic violence and drug abuse that she had observed in her home while growing up. Dabney possesses the skills, coping techniques, and education to "make different and better choices for herself" in the future, according to Krznarich.

{¶ 10} Two of Dabney's friends testified as well. Dawn Haynes, an attorney in Cleveland who first met Dabney in college, stated that OLAP and the counseling sessions have helped Dabney realize that she had been in an abusive relationship with Kirkland, and Haynes expressed her belief that Dabney is a "great person" who is "capable of being a great attorney." Kim Simpson, a pediatrician in Cleveland who has known Dabney since 1990, testified that she would not hesitate to trust Dabney with confidences or with money, despite her failure to disclose her criminal history on her bar applications.

{¶ 11} The panel was clearly troubled by Dabney's dishonesty on her applications. She testified at the hearing that she did not provide truthful answers about her criminal record on the applications because she was embarrassed by it and remembered few details about her convictions and could not even recall the false names that she had provided to the authorities at the time of her arrests. She stated that providing any information about the convictions would have opened a "can of worms" that she "just wasn't equipped to deal with" at that time. At the hearing before the panel in January 2005, Dabney testified that she has come to terms with her past, acknowledges her dishonesty on the bar applications, and fully understands the importance of honesty and candor in the legal profession.

{¶ 12} The panel concluded that Dabney had not established her character and fitness for admission to the Ohio bar by clear and convincing evidence. The board adopted the panel's findings of fact and recommended that Dabney's license to practice law in Ohio be revoked. The board further recommended that Dabney be permitted to reapply for admission in February 2006 and that her character and fitness be reviewed and approved before she is readmitted to the Ohio bar.

{¶ 13} We adopt the findings, conclusions, and recommendation of the board. Under Gov.Bar R. I(11)(D)(1), "[t]he applicant has the burden to prove by clear and convincing evidence that the applicant possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." We find Dabney's compliance with her OLAP contract commendable, and we recognize— as did the panel and the board—that Dabney's dishonesty did not extend beyond her answers to questions about her criminal history. Even so, we are troubled

by her criminal conduct in New York—including her use of a false identification card and her repeated use of aliases when she was arrested—as well as her dishonesty on her law school application, her application to register as a candidate for admission to practice law in Ohio, her Ohio bar application, her Nevada bar application, and her application to take the patent bar. That history of dishonesty extended from her first arrest in 1995 until 2003, when Nevada bar officials first discovered her criminal past, and that history rightly prompted the board to question whether Dabney had met her burden of proving her character and fitness to practice law.

{¶ 14} "Evidence of false statements, including material omissions, and lack of candor in the admissions process reflect poorly on an applicant's character, fitness, and moral qualifications." *In re Application of Cvammen*, 102 Ohio St.3d 13, 2004-Ohio-1584, 806 N.E.2d 498, ¶ 22. We have in other cases disapproved bar applications in which applicants failed to disclose requested information in a forthright and complete manner. See, e.g., *In re Application of Williams* (2002), 95 Ohio St.3d 107, 766 N.E.2d 143; *In re Application of Ireland–Phillips* (1995), 71 Ohio St.3d 609, 646 N.E.2d 453.

{¶ 15} For these reasons, we revoke Dabney's license to practice law in Ohio. She may, however, reapply for admission in February 2006 or later by filing a Supplemental Character Questionnaire. Upon reapplication, she must undergo a complete character-and-fitness investigation, including the preparation of a report by the National Conference of Bar Examiners, in order to allow the board to determine whether she possesses the necessary qualifications for readmission to the practice of law in Ohio. If her character and fitness are approved upon her reapplication, she may be readmitted without retaking the Ohio bar examination.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Michael E. Murman, for applicant.

Clair E. Dickinson, for Akron Bar Association.