*192 O’Donnell, J.,
concurring in part and dissenting in part.
{¶ 32} Respectfully, I have a different view of this case. I concur in the judgment to disapprove the current application filed by Shamir Lee Coll, but contrary to the majority, I would permanently preclude this applicant from submitting an additional application for admission to the practice of law in the state of Ohio.
{¶ 33} This court has recognized that “the practice of law is an extraordinary privilege bestowed by this court upon one who meets the qualifications for admission and continues to maintain the standard of ethical conduct as prescribed by the rules of the court.” Shimko v. Lobe, 103 Ohio St.3d 59, 2004-Ohio-4202, 813 N.E.2d 669, ¶ 54. For this reason, an applicant seeking admission to the practice of law in Ohio shoulders the heavy burden “to prove by clear and convincing evidence that the applicant possesses the requisite character, fitness, and moral qualifications for admission to the practice of law.” In re Application of Blackwell, 116 Ohio St.3d 530, 2007-Ohio-6041, 880 N.E.2d 886, ¶ 32.
{¶ 34} This court requires “the applicant’s forthright, conscientious participation” in the character and fitness review process. In re Application of Bonetti, 117 Ohio St.3d 113, 2008-Ohio-503, 881 N.E.2d 1249, ¶ 9, citing Gov.Bar R. I(12)(C)(6). As we explained in In re Application of Corrigan, 47 Ohio St.3d 32, 546 N.E.2d 1315 (1989),
“[w]e view such proceedings as being different from the adversary contest associated with, for example, disciplinary cases. A hearing to determine character and fitness should be more of a mutual inquiry for the purpose of acquainting this court with the applicant’s innermost feelings and personal views on those aspects of morality, attention to duty, forthrightness and self-restraint which are usually associated with the accepted definition of ‘good moral character.’ Such a view commands the utmost in cooperation between the applicant and the board, and leaves little room for the employment of doctrines which work to keep relevant information from the board.”
(Emphasis added in Corrigan.) Id. at 34, quoting In re Application of Davis, 38 Ohio St.2d 273, 274-275, 313 N.E.2d 363 (1974).
{¶ 35} Thus, “[t]he importance of an applicant’s cooperation in the hearing process cannot be overstated.” In re Application of Harris, 101 Ohio St.3d 268, 2004-Ohio-721, 804 N.E.2d 429, ¶ 13. We therefore have “disapproved bar applications in which applicants failed to disclose requested information in a forthright and complete manner.” In re Dabney, 107 Ohio St.3d 40, 2005-Ohio- *193 5834, 836 N.E.2d 573, ¶ 14, citing In re Application of Williams, 95 Ohio St.3d 107, 766 N.E.2d 143 (2002), and In re Application of Ireland-Phillips, 71 Ohio St.3d 609, 646 N.E.2d 453 (1995). “Even one incomplete answer can lead to the disapproval of an admission application if the applicant does not fully and honestly explain when the opportunity arises.” In re Application of Bagne, 102 Ohio St.3d 182, 2004-Ohio-2070, 808 N.E.2d 372, ¶ 23.
{¶ 36} Accordingly, in Harris, we disapproved an applicant who failed to produce financial information and records requested by the Board of Commissioners on Character and Fitness during the character and fitness investigation but allowed him to reapply for admission after filing an entirely new application to register as a candidate for admission and undergoing a new character and fitness evaluation. Harris at ¶ 15. In Dabney, we revoked Dabney’s Ohio license to practice law after the State Bar of Nevada discovered that she had not disclosed on her Nevada bar application her five arrests for prostitution-related offenses in the state of New York. Dabney at ¶ 3, 13. She voluntarily revealed that information to this court in an amendment to her Ohio bar application, prompting this court to revoke her law license. Id. at ¶ 4, 15. After we revoked her license to practice law, we permitted her to reapply for admission. Id. at ¶ 15. This court disapproved the application in Williams because the applicant did not disclose “in a forthright and honest manner” that he had been asked to resign from the Huber Heights police force after he “engaged in some indiscreet activity” with a teenager. Williams at 107-108. Williams was permitted to reapply after a two-year hiatus. Id. at 108. The application in Ireland-Phillips was disapproved because the applicant failed to fully explain a judgment entered against her for cashing a check with a forged indorsement, but the court permitted her to reapply two years later. Ireland-Phillips at 610-611. And in Bagne, we disapproved the application based on the applicant’s “reluctance to respond with total honesty” and his lack of candor in giving inconsistent accounts of conduct that resulted in an aggravated assault conviction entered 11 years before he applied to take the Ohio bar exam, and we permitted him to reapply after a three-year hiatus. Bagne at ¶ 23-24.
{¶ 37} Thus, the court has considered cases involving a failure to produce financial records, a concealment of prior prostitution-related offenses, the failure to disclose in a forthright manner information relating to resignation from employment, and the failure to fully explain a judgment resulting from a forged instrument. But none equate with a deliberate or persistent refusal to disclose the description of prior offenses combined with an explanation that the duty to uncover those details somehow belonged to this court.
*194 {¶ 38} Coll had been charged with traffic violations during the ten years preceding his application, and therefore, when he applied for admission to the bar, his application required him to complete and submit along with his application Form 5T by providing specific information for each incident, including the name of the law-enforcement agency, a description of the incident, the charges originally filed, and the final disposition. But rather than provide a separate Form 5T for each incident, he simply indicated that he had traffic violations in “Many Cities, Many Counties, OH.”
{¶ 39} The Office of Bar Admissions twice informed Coll that he needed to complete a separate Form 5T for each violation, but he did not do so. As he later explained to the hearing panel reviewing his application, although he understood that he had not provided all of the information required by the application, he “didn’t feel like [he] had to.” He noted that the blanks he left on his application were “a pattern. That’s not ignorance. There’s a pattern to these answers.” Coll also admitted that he “certainly could have provided all this information, [but he] just chose not to,” believing that he had the right not to answer any factual question on the application.
{¶ 40} Coll thus purposefully and knowingly failed to disclose information on his application. And, rather than cooperate in the review of his character and fitness, he persisted in his refusal to disclose the requested information, based on his mistaken belief that his driving record for the past ten years was not material to his fitness to be an attorney and that he had provided sufficient information for the board and this court to conduct its own investigation into his offenses. Further, he maintained that posture during oral argument before this court. Having failed to fully participate in the character and fitness review process by providing incomplete answers, he cannot sustain his burden to demonstrate that he is qualified for admission. I therefore concur with the court’s decision to disapprove Coil’s application.
{¶ 41} Respectfully, I dissent from the majority’s decision to permit him to apply to take the July 2018 bar exam. The majority points to “the unlikelihood that the traffic violations omitted from his registration application, if properly disclosed, would have raised significant concerns about his character and fitness.” (Emphasis sic.) Majority opinion at ¶ 23. And it states that “it appears that the offenses he failed to disclose in his registration application were not as severe as the offenses” not disclosed by other applicants who have been permitted to reapply to take the bar exam. Id. at ¶ 30.
{¶ 42} The problem with this analysis is that Coll has not yet provided complete information about all of his offenses, and therefore it is not possible to compare his conduct to any other case or to decide that his pattern of conduct does not disqualify him from admission to the practice of law. For example, he *195 described some of his violations only as “speeding,” without giving specific details of the incidents or the dispositions; and as one member of the hearing panel noted, “[I]t might make a difference to the Court if you were going 100 miles an hour in a school zone whereas it might not make any difference to the Court if you were going 25 in a 20 zone.” The facts of each violation are material to our review of Coil’s application, and without full disclosure of the details of each violation, it is not possible to conclude, as the majority does, that his pattern of conduct does not raise significant concerns about his character and fitness.
{¶ 43} Here, Coll impeded the bar-admissions investigation into his past conduct—a process that relies on the honesty and candor of the applicant to identify past incidents of unlawful conduct to narrow the focus of the board’s investigation. As the panel noted in its report, rather than providing the specific information needed to judge his character and fitness to be an attorney, he described the incidents on his Form 5T as “[rjacism mostly.” He testified that he felt he had been racially profiled, and as the panel further noted, when asked to supplement his application, he described his offenses as “KKK ... their city is worthless,” “The police are the KKK,” “KKK ... maybe I was speeding,” “KKK ... They wanted to be me,” and “KKK ... They hate being them.” In explaining these answers, he said, “I thought it was a great opportunity to tell the State of Ohio how I want to freely express myself’ and that “I was just making it a point that I can say whatever I want to the State of Ohio.” He told the panel, “I wanted this case. * * * I thought it would be interesting. I thought it would be worth it. I said, * * * you can do it and you’ll still get final approval to sit for the bar.”
{¶ 44} He therefore made clear that his failure to provide the information requested was an attempt at “political expression” in which he sought a reaction from the board; but although he testified that he would advise clients to fill out their own application the same way, he cites no specific authority for the proposition that the right to free expression permitted him to refuse to give answers required of all other applicants seeking the privilege to practice law. Moreover, not only did he indicate that his statements about the police were “just speech” and that he “wasn’t referring to anybody in specific,” but also the board heard evidence that he had previously admitted that he “didn’t really believe” his own claim that the police were the KKK. Thus, the lack of seriousness, candor, and judgment Coll displayed throughout these proceedings renders him unfit to practice law.
{¶ 45} Inexplicably, after detailing the transgressions and deliberate failure to disclose information necessary to evaluate his application, the majority cites three cases in which this court delayed a reapplication for admission: In re Application of Steinhelfer, 142 Ohio St.3d 120, 2015-Ohio-978, 28 N.E.3d 107 (three years), In *196 re Application of Baudendistel, 141 Ohio St.3d 101, 2014-Ohio-5200, 21 N.E.3d 1063 (two years), and In re Application of Grimsley, 141 Ohio St.3d 94, 2014-Ohio-5033, 21 N.E.3d 1057 (one and a half years). By comparison, Coil’s refusal demonstrates an attitude that he has no obligation to answer the questions posed to all other applicants and his belief that it is our obligation to investigate and discover the answers instead of having him respond. This is an egregious character failure on his part. Yet the court here imposes an application delay of only two years, one year less than the recommendation of the board after its thorough review of this matter. The attitude, lack of candor, and disrespect shown toward this court in Coil’s repeated refusal to submit a completed application does not warrant a lenient sanction.
Shamir Lee Coll, pro se.
Keithley B. Sparrow, Toledo Bar Association.
{¶ 46} Unlike the majority, I am not convinced that Coll will benefit from the brief “ ‘period of maturation’ ” that the court provides him. Majority opinion at ¶ 30, quoting In re Application of Zatik, 126 Ohio St.3d 397, 2010-Ohio-3828, 934 N.E.2d 335, ¶ 8. In my view, his persistent refusal to provide the answers to questions required of all other applicants for admission to the practice of law and his explanation and belief that the requirement to answer does not apply to him (he stated that he “didn’t feel like [he] had to” answer) demonstrate a lack of candor and a disrespect for the judiciary and for the obligation of this court to thoroughly investigate bar applicants with a view toward their suitability to practice law.
{¶ 47} The oath taken by all lawyers in Ohio requires an aspiring lawyer to “show respect toward judges, court staff, clients, fellow professionals, and all other persons.” Gov.Bar R. I(8)(A). Coll has demonstrated an attitude that shows he lacks the ability to take that oath and does not have the professional judgment demanded of all lawyers. His lack of candor and his disrespect for the court in frustrating our obligation to thoroughly investigate those seeking admission to the bar in Ohio suggest that he will not ever have the character and fitness to take the oath to become a lawyer in Ohio.
{¶ 48} Accordingly, I would permanently prohibit Shamir Lee Coll from applying for admission to the practice of law in Ohio.
O’Connor, C.J., concurs in the foregoing opinion.